Michael Kind, Esq.
Nevada Bar No.: 13903
**KIND LAW**
8860 South Maryland Parkway, Suite 106
Las Vegas, Nevada 89123
(702) 337-2322
(702) 329-5881 (fax)
mk@kindlaw.com

George Haines, Esq.
Nevada Bar No.: 9411
Gerardo Avalos, Esq.
Nevada Bar No.: 15171
**FREEDOM LAW FIRM**
8985 S. Eastern Ave., Suite 350
Las Vegas, Nevada 89123
(702) 880-5554
(702) 385-5518 (fax)
Ghaines@freedomlegalteam.com
*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Tiffany Yip, RiAnna Apodaca, Damion Payne, Dustin Lebsack, Brittney Meadows, Jasmine Cooley, Jessica Lumpford, Linette Davis, Jay Enos, Shaft Prince, Moniqua Ramos, Kiley Gomez, Edwin Lopez, Keith Nowalski, Robin Brown, Kevin Rader, Tabitha Russell, Clifton Smith, Lorae Le Clarc, James Gilligan, Tia Stone, Jessica Gaudet, Cassandra Allan, Christine Verser, Denise Kaili, Samantha Raynn, Lance Tharp, Kevin | Case No.: <br><br> **Complaint for damages and injunctive relief for violations of:** <br><br> 1. **Electronic Funds Transfer Act** <br> 2. **Federal Due Process Under the 14th Amendment** <br> 3. **Nevada Due Process Clause** <br> 4. **NRS 598** <br> 5. **Negligence & Negligence Per Se** |

Thompson, Anthony Greco, Alejandra Rodriguez, Cesar Pino, Laura Delamora, Crystal Francis, Nenescha Robinson, Kimberly Stella Gagon, Donald McKee, Cory Sadler, Daniel Lopez, Rodney Richardson, Matthew Ozuna, Mechteld Hardy, Leandra Smith, Freddrick Hunter, Larisa Joe, Heather Helm, Jacory Taylor, James Brennan, Angel Miranda, Shaun Davis, Brian Hogan, Richard Medlock, James Morgan, Tony Salazar, Martin Placencia, Maria Gil, Mike Considine, Robin Woods, Tiffany Turner, Nicole Stoddard, Sharone Walker, Catherine O'Sullivan, Audriana Richey, Carsen Guinn, Wes Smith, Donaldo Perez, Brandon Matlock, Eric Peterson, Miguel Mendoza, Deborah Chase, Brandy Watkins, Jose Deras, Victoria Mancilla, Bonnie Engelby, David Luzzi, Scott Kunichika, Jennifer Aquino, Barry Henry, James Pollins, Bryan Aaron, Michael Heuer, Karla Aguilar, Bryant Wadsworth, Keith King Jr., Sandra Bozeman-Hamilton, Michael Moren, Kelly Corrieri, Robert Orlinick, Kristopher Burtz, Shannon Harris, Tyler-James Rafferty, Erin Kelly, Michelle Morales, Julissa Elias, Marcos Parra, Tyrone Samuel, Atelaite Fonua, Roy McDowell, Nichole Hill-Pancirov, Aleasha Conley, Eric Deatherage, Cynthia Weber, Steven Williams, Courtney . Datlof, Imanae Walls, Alfonso Diaz, Darrell Sanchez, Joesaph Bennett, Jarvisthy LaCasse, Tigist Beyene, Cloy Flores, Patricia

6. **Breach of Contract**
7. **Breach of Implied Contract**
8. **Breach of the Implied Covenant of Good Faith and Fair Dealing**
9. **Breach of Fiduciary Duty**
10. **Breach of Contract, Third-Party Beneficiaries**
11. **Breach of Implied Covenant of Good Faith and Fair Dealing, Third Party Beneficiaries**

**Jury trial demanded**

Terry, Michael Raines, Krystal
Segoviano, Kevin Hayes, Cromwell
Ramos, Shianne Taylor,  Tyrance
Tyler, Gabriel Cervantes, Megan
Cordrey, Ebony Anderson, Antonio
Davila, Martin Silva, Sean Whiteside,

               Plaintiffs,

 v.

Bank of America, N.A.,

               Defendant.

**Introduction**

1. The above-named plaintiffs ("Plaintiffs ") bring this action related to Nevada Unemployment Insurance ("UI"), and other public benefits that are, were or were supposed to be paid through debit cards issued by Defendant Bank of America, N.A. ("Bank of America" or the "Bank"). Plaintiffs allege violations of the Electronic Funds Transfer Act, 15 U.S.C. §1693 et seq ("EFTA") and its implementing regulation, 12 C.F.R. Part 1005 ("Regulation E"); violations of the Due Process Clauses of the U.S. and Nevada Constitutions; Breach of Contract; Negligence; and other state common law and statutory claims to remedy Bank of America's mismanagement of its obligations under the Nevada Department of Employment, Training & Rehabilitation's ("DETR") benefits payment programs. In violation of its constitutional, statutory, common law, and contractual obligations to Plaintiffs, Bank of America has deprived Plaintiffs of their statutory right to public benefits without prior notice or an opportunity to be heard, failed to take reasonable steps to protect Plaintiffs benefits from fraud, and/or otherwise failed to ensure that Plaintiffs are able to receive and access the benefits to which Plaintiffs are lawfully entitled.

**Background**

2. Like thousands of other Nevadans, Plaintiffs became unemployed during the COVID-19 pandemic. Plaintiffs and other Nevadans (collectively referred to as "Debit Cardholders", "Cardholders" or "Cardholder") applied for UI, and other public benefits through programs administered by Nevada's DETR, and Plaintiffs was found eligible by DETR to receive the benefits to which Plaintiffs were lawfully entitled to.

3. Pursuant to an exclusive contract between DETR and Bank of America, Plaintiffs received, or were to receive, periodic benefit payments. The benefit payments were not paid directly from DETR, but through a Bank-issued and

Bank-administered prepaid debit card (the "Debit Card" or "Card"), which was linked to an individual Bank of America depository Account ("Debit Card Account" or "Account"). Although Bank of America was legally required to take necessary and reasonable steps to protect Plaintiffs' Debit Card and Account from fraudulent access by third parties, Bank of America failed to do so. Among other things, Bank of America failed to secure Plaintiffs' sensitive Card and Account information and issued Plaintiffs a Debit Card without fraud-preventing EMV chip technology that the Bank has used on all its other debit and credit cards since 2014. Instead, Bank of America's Debit Cards used outdated magnetic stripe technology, which makes them readily susceptible to cloning and other schemes that have allowed third parties to fraudulently use and access Plaintiffs' Debit Cards and Accounts.

4. In addition to Bank of America's negligence, and it breaching its statutory and common law obligations to Plaintiffs by failing to protect Plaintiffs' Debit Card and Account. Bank of America also has violated its statutory obligations to Plaintiffs under the federal EFTA and other laws by not implementing adequate and reasonable systems, measures, and protections to: permit prompt and effective identification of fraud; create an effective and efficient process for submission of fraud claims; allow for provisional access to already approved benefits during the course of fraud investigations; provide for prompt and accurate resolution of fraud claims, and prompt reimbursement of funds stolen from Accounts. For example, instead of providing an effective and timely process for Cardholders to report unauthorized transactions and submit fraud claims, Bank of America adopted a series of "customer service" practices and policies that require Plaintiffs to spend hours of their time making calls to and on the phone with the Bank's "customer service" department which have frustrated and obstructed Cardholders' efforts to submit fraud claims. When

Cardholders persevere and finally reach a Bank of America customer service representative to report Account fraud or irregularities, the Bank then violates statutory, common law, and constitutional rights by denying fraud claims without investigation or explanation and freezing Debit Card Accounts indefinitely, thereby depriving Cardholders access to past and future benefits without any prior notice or an opportunity to be heard.

5. The cardholder agreement between Bank of America and Plaintiffs sets forth the Bank's "Zero Liability" policy, which promises to protect Plaintiffs from adverse financial consequences if a Plaintiff's Debit Card or Account are fraudulently used or accessed by third parties. Bank of America has not implemented this policy as promised resulting in Plaintiffs incurring financial losses from third-party fraud caused by the Bank's failure to have reasonable procedures in place to identify and receive notifications of fraud, failure to adequately monitor its customer service, by establishing procedures that frustrate and obstruct timely submission of fraud claims by Plaintiffs and other Cardholders, closing fraud investigations without conducting reasonable and appropriate review, and failure to extend provisional credit to Plaintiffs and other Cardholders as required by law while fraud investigations are underway or after fraud is, or reasonably should have been, determined. Bank of America has also deprived Plaintiffs of their constitutional rights to notice and an opportunity to be heard before causing Plaintiffs Debit Card and Account to be frozen for extended periods of time, thereby depriving Plaintiffs of access to past, present, and future disbursements of government benefits for which they have been found eligible to receive.

6. By the acts and omissions alleged here, Bank of America has violated federal and state constitutional due process protections, violated EFTA and its implementing Regulation E, and violated Nevada's Deceptive Trade Practices Act, NRS 598. Bank of America has also acted negligently; breached its cardholder agreement with Plaintiffs, breached its contract with DETR (to which Plaintiffs are an intended third-party beneficiary), breached the implied covenant of good faith and fair dealing under those contracts, and its fiduciary duties to Plaintiffs. These acts and omissions have caused substantial financial damage and other harm to Plaintiffs, and unless promptly enjoined will cause Plaintiffs and the public to suffer immediate and irreparable harm.

### Jurisdiction and Venue

7. This Court has subject matter jurisdiction pursuant to: (a) 28 U.S.C. §1331 because this action arises under the federal Due Process Clause and the Electronic Funds Transfer Act, 15 U.S.C. §1693 et seq.; (b) 28 U.S.C. §1332(a) because Plaintiffs is a citizen of Nevada, and Bank of America is incorporated under the laws of Delaware and has its principal place of business in North Carolina, and the amount in controversy exceeds $75,000; and (c) supplemental jurisdiction under 28 U.S.C. §1367 with respect to the claims for relief arising under state law.

8. This Court has specific personal jurisdiction over Bank of America because the Bank has sufficient minimum contacts with Nevada, has purposely availed itself of the benefits and protection of Nevada law, and conducts a substantial amount of business in and with the State of Nevada (including with DETR), such that the Court's exercise of personal jurisdiction over the Bank accords with due process.

9. Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial portion of the acts or omissions giving rise to the claims alleged occurred in this District, and because Bank of America is subject to the Court's personal jurisdiction with respect to this action

10. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

## Parties

11. Plaintiffs reside throughout Nevada. Plaintiffs became out of work during the COVID-19 pandemic. Plaintiffs then applied for and were found eligible by DETR to receive unemployment benefits. Plaintiffs received a Bank of America Debit Card with either a magnetic stripe and/or an EMV chip to access DETR benefits. Plaintiffs were then the victim of unauthorized transactions on Plaintiffs Debit Card Account. Plaintiffs promptly reported the unauthorized transaction(s) to Bank of America, which failed to comply with its legal obligations as alleged herein, causing Plaintiffs to suffer immediate and irreparable injury.

12. Defendant Bank of America, N.A. ("Bank of America" or "Bank") is a financial institution incorporated in the State of Delaware and headquartered in North Carolina that conducts a substantial amount of business in Nevada, including business pursuant to its exclusive contract with the State of Nevada DETR to administer UI and other benefit payments through DETR Debit Cards and Accounts.

## General factual allegations

### A. The Bank's Contract with DETR

13. DETR is an agency of the State of Nevada that is responsible for administering numerous benefits programs for low-income, unemployed, and other Nevadans, including programs providing unemployment insurance (UI) benefits, disability insurance benefits, paid family leave benefits, pandemic unemployment assistance (PUA) benefits, and pandemic emergency unemployment compensation (PEUC) benefits to Nevadans (collectively, "DETR benefits").

14. In around 2015, Bank of America entered into an exclusive contract with DETR for the provision of services, including issuance of Bank of America DETR Debit Cards through which individuals entitled to receive DETR benefits could access those benefits.

15. On information and belief, Bank of America obtained that contract by falsely representing to DETR that it would provide "best-in-class" fraud monitoring.

16. DETR began distributing DETR benefits pursuant to its contract with Bank of America, under which the default means of distributing DETR benefits payments is through Bank-issued and Bank-administered DETR Debit Cards, rather than paper checks or other forms of payment.

17. In 2015, Bank of America administered a similar program for the State of Nevada in connection with DETR. In its proposal, Bank of America represented that it would fully protect Debit Cardholders in case of fraud. Specifically, Bank of America represented that it would comply with all EFTA and Regulation E requirements and timelines with respect to error resolution and provided assurance that Debit Cardholders "should feel comfortable in dealing with disputed transactions knowing that we extend our Zero Liability protection on dispute claims, including ATM and pinned POS transactions." The Bank described its error resolution process as follows:

A Claimant can file a dispute by calling the Customer Service Center for complete instructions. . . . After selecting the 'dispute a transaction' option within our IVR, the account holder will immediately speak with a live representative who will further review the transaction and any other possible fraudulent transactions with the account holder. . . . Once a dispute is requested in our system, a case will be created within our claims tracking system and tracked until final resolution. Per Regulation E, within 10 business days of the initial dispute, we will promptly correct the error. . . . If more time is needed, we will temporarily credit the account holder's account within 10 business days of the initiated dispute for the full disputed amount. There is no limitation or maximum to the credit amount provided. This will allow the account holder to use the funds while the claim is being resolved.The Bank also made representations about the "[s]uperb customer service" levels it would guarantee Debit Cardholders, boasting that "[w]e set the bar high and pride ourselves on serving each caller with swift, responsive service," and providing assurances that "[l]ong call hold waits and busy signals are not tolerated at Bank of America. Your program's average speed of answer is 30 seconds and your average handle time is 230 seconds." The Bank promised, among other things, to provide an Interactive Voice Response (IVR) system and live Customer Service Representative (CSR) support available "24 hours a day, seven days a week." The Bank promised that live CSR agents would be available 24/7 to assist Debit Cardholders with "[i]nvestigat[ing] transactions (fraud security, use)," "[p]rocess[ing] lost/stolen/damaged card reports," and "[c]heck[ing] on the Status of Disputed Transactions." The Bank further promised that "no call [would be] transferred to voicemail or automatically disconnected from the queue," that "calls [would] not [be] immediately placed on hold," that "the average wait time to speak to a live CSR" agent would be "no more than 30 seconds for 70 percent of the calls, and no more than two (2) minutes for all calls," and that the Bank would "monitor Customer Service calls to ensure quality service and address Customer complaints."

18. On information and belief, DETR entered into the DETR-Bank Contract because of, and in reliance on, the Bank of America's representations.

19. Pursuant to the terms of the DETR-Bank of America Contract, upon information and belief, DETR and the Bank are engaged in a joint undertaking to administer the benefits programs and distribute DETR benefit payments to eligible claimants through DETR Debit Card. The Debit Card is the default payment method for DETR benefits.

20. DETR Debit Card and Accounts are an integral part of DETR's benefits distribution and administration system.

21. In many cases, Bank of America maintains the  freeze on a Cardholder's Account even long after DETR informs the Cardholder that there is no need to re-verify benefits eligibility or confirms that the Cardholder is eligible for benefits.

22. By authorizing Bank of America to freeze Plaintiffs' Debit Card Account based on the Bank's own determination of potential fraud, and by authorizing the Bank to require DETR Debit Cardholders to re-verify benefits eligibility with DETR as a necessary (but not sufficient) condition of unfreezing an Account, DETR has delegated to the Bank the responsibility and authority to determine when, why, and how to deny Cardholders' access to benefits to which DETR has already found them entitled to receive. The Bank accepted and has exercised that delegated authority by freezing the DETR Debit Card Accounts of thousands of benefits recipients and thereby suspending those individuals' public benefits.

23. The DETR-Bank of America Contract, which upon information and belief contains a revenue-sharing agreement, creates a relationship of financial interdependency between DETR and Bank of America. Under the revenue-sharing agreement, the State of Nevada benefits from delegating the

1 administrative burdens of DETR benefits distribution to the Bank at no cost to
2 the State, while the Bank benefits from collecting point-of-sale transaction fees
3 and other fees from millions of DETR Debit Cardholders and vendors and from
4 earning interest on funds loaded onto the DETR Debit Card while the funds
5 remain unspent by cardholders, which, upon information and belief, is revenue
6 it shares with the State.

### B. The Bank's Failure to Secure Sensitive DETR Debit Cardholders Information

24. Bank of America has failed to maintain, store, share, or transfer DETR Debit
Cardholders' personally identifiable information, Card and Account data, and
other financial data and information (collectively, "Cardholder Information") in
a reasonably secure manner consistent with the Bank's obligations to DETR and
to Plaintiffs and other Cardholders. As a result, Cardholder Information has
been obtained by unauthorized third parties in a series of security breaches that
have allowed millions of dollars to be stolen from Cardholders through
unauthorized transactions.  Bank of America's repeated and ongoing failure to
secure Cardholder Information violated and continues to violate the Nevada
Consumer Privacy Act and the Bank's common law duty to take reasonable
steps to protect Cardholder Information from unauthorized access, theft, or
disclosure.

25. Some DETR Debit Cardholders who have had money stolen from their Debit
Card Account through unauthorized transactions, received and activated, but
never used their DETR Debit Card. Such unauthorized transactions could only
have occurred if Bank of America failed to store or transfer Cardholder
Information in a reasonably secure manner.

**C. The Bank's Use of Outdated, Vulnerable Magnetic Stripe Technology**

26. To access their DETR benefits, DETR Debit Cardholders must send the Cardholder Information stored on their cards through a processing network operated by Visa or Mastercard. The first step in that process occurs at the point of sale, where the card must either be swiped or inserted into a card reader. The reader obtains the Cardholder Information stored on the card and transmits it to the financial services provider through a computer network, either at the time of the transaction or later in a "batch" with other transactions.

27. From the 1960s through the last decade, magnetic stripes were the standard for storing consumer information on debit card and credit card in the United States. A magnetic stripe contains static data about the card, including the cardholder's name, the card number, and the card expiration date. This data is printed directly on the outside of the card and recorded on the magnetic stripe. When swiped through a reader, this data is collected and transmitted as part of the transaction process.

28. Because the data on a magnetic stripe are static and easily readable, magnetic stripe card are highly susceptible to fraud. One common method of stealing information from magnetic stripe card is called "skimming," a process by which a wireless transmitter affixed to a card reader collects the information on the magnetic stripe when the card is swiped or inserted and sends it to a nearby computer. The recipient can then use the information to easily clone the consumer's card, conduct unauthorized transactions, and access the bank account connected to the card.

29. Personal data on magnetic stripe card can also be captured by hackers on a large scale. For example, in 2013, hackers infiltrated the retailer Target's payment terminals and systematically captured the information of every swiped card for weeks, ultimately gathering the card information of tens of millions of people. Card data collected in this manner can be sold on an underground market, where the stolen data can be used to make fraudulent purchases.

30. Over the past decade, in an effort to stem the consumer fraud enabled by magnetic stripes, the financial services industry in the United States has adopted EMV chip technology as the industry standard. While magnetic stripes are "static," with the same card-identifying information provided for every transaction, EMV chips are "dynamic," meaning the data they contain can be interacted with, altered, and updated. An EMV chip creates a unique electronic signature for each transaction, making data from past EMV chip card purchases useless to would-be thieves, thereby significantly reducing the risk of unauthorized transactions.

31. In 2011, Bank of America announced it would offer EMV chips in corporate credit card to U.S. business customers who regularly traveled outside the United States.

32. On September 30, 2014, Bank of America announced that it would include chip technology on "all new and reissued" consumer debit cards. In announcing this shift, a Bank of America executive stated that "chip technology is an important tool in increasing card security, and we want our customers to have the best possible experience when using their payment card." The executive added that the "new chip-enabled card will improve security of customers' transactions."[3]

33. In 2015, card issuers and processors began a nationwide shift to EMV chip card. By 2017, an estimated 855 million EMV chip card had been issued to U.S. consumers, and such card are now standard in the industry.

34. In 2015, card-issuing banks and payment networks stopped absorbing liability for fraudulent transactions. On October 1, 2015, retail merchants who did not have certified EMV chip readers became liable for fraudulent transactions if the consumer presented an EMV chip card. In essence, this meant liability for consumer card fraud would fall on either the retailer or the card issuer, whichever was the least compliant with the EMV protocol.

35. As stated on Bank of America's own website, EMV chip technology "has been around for over 20 years and is the credit and debit card security standard in many countries around the world. When purchases are made using the chip feature at chip-enabled terminals, the transaction is more secure because of the process used to determine if the card is authentic. This makes the card more difficult to counterfeit or copy." Bank of America also assures its account holders on its website that "whether you use the magnetic stripe or the chip to make your purchase, you can have confidence in the protection and security features we provide for all credit and debit Account."

36. Despite the fact that Bank of America has been well aware for many years that an EMV chip card are significantly more secure than a magnetic stripe card, is the "debit card security standard," and despite its representations to DETR, the Bank chose to issue DETR Debit Cards using old, vulnerable magnetic stripe technology to hundreds of thousands of the most financially vulnerable Nevadans like Plaintiffs. The Bank continued to issue DETR Debit Cards with no EMV chip, notwithstanding its announcement nearly seven years ago that it would include EMV chip technology on all consumer debit card to help prevent fraud. Predictably, the issuance of DETR Debit Cards without EMV chips led to rampant fraud, resulting in the ongoing loss of millions of dollars in DETR benefits intended to assist Nevadans who lost their jobs, including during the COVID-19 pandemic.

**D. The Bank's Contractual Promises and Representations to its Cardholders**

37. Bank of America represented to Plaintiffs and other Cardholders, in its cardholder agreement and on its website, that the Cardholders would not be responsible for unauthorized transactions on DETR Debit Cards or Accounts because of the Bank's "Zero Liability" policy, under which the Bank would fully protect them against, and would reimburse them for, any unauthorized transactions. Bank of America also represented to Cardholders that they could call the Bank 24 hours a day 7 days a week to report any unauthorized transaction to live customer services representatives, and that the Bank would promptly investigate the transaction and determine whether it was unauthorized within 10 business days thereafter, except that if the Bank took longer than 10 days (but in no event longer than 45 days) to investigate the transaction, the Bank "will credit your Account within 10 business days for the amount you think is in error, so that you will have the money during the time it takes us to complete our investigation."

38. In the Bank's Debit Card Account Agreement ("Cardholder Agreement"), to which all DETR Debit Cardholders must agree, the Bank sets forth the above promises in detail. The Cardholder Agreement has an effective date of March 1, 2018, and thus has been effective throughout Plaintiffs' receipt of DETR benefits. The Cardholder Agreement states: "Under the Bank of America 'zero liability' policy, you may incur no liability for unauthorized use of your Card up to the amount of the unauthorized transaction, provided you notify us within a reasonable time . . . ." The Cardholder Agreement advises the cardholder to "contact us at the number listed below AT ONCE if you believe your Card has been lost or stolen or if you believe that someone may use of has used your PIN assigned to your card without your permission. Telephoning is the best way of keeping your possible losses down." The Cardholder Agreement requires

cardholders to call or write to report an unauthorized transaction "no later than 60 days" after the Bank sent the statement on which the transaction appeared.

39. The Cardholder Agreement promises that Bank of America "will determine whether an error occurred within 10 business days" after an unauthorized transaction is reported. The Cardholder Agreement reserves the right to "take up to 45 days to investigate" if the Bank "need[s] more time," in which case the Bank promises that "we will credit your Account within 10 business days for the amount you think is in error, so that you will have the money during the time it takes us to complete our investigation." *See* https://www.visaprepaidprocessing.com/nevadauidebitcard/Program/Terms.

**E. The Rampant Third-Party Fraud on DETR Debit Card Accounts**

40. In the spring of 2020, the COVID-19 pandemic devastated Nevada's economy, and millions of workers lost their jobs due to business closures and mass layoffs. The state's unemployment rate skyrocketed, following closure orders issued by the Governor and county health officials. Industries such as hospitality, food service, retail trade, and educational services were especially hard hit.

41. As a result, tens of thousands of Nevadans turned to the DETR unemployment benefits programs administered by Bank of America to pay bills and make ends meet.

42. As widely reported in the media and as described by nation-wide legislators who report having heard from thousands of constituents, thousands of Debit Cardholders have been the victims of fraud throughout the pandemic, resulting in millions of dollars having been stolen from Plaintiffs' Accounts, including through fraudulent ATM withdrawals, such as many Plaintiffs on this case have experienced.

43. Countless DETR Debit Cardholders have reported hundreds and thousands of

dollars stolen through unauthorized use of DETR Debit Cards. These unauthorized transactions have taken various forms, including massive ATM withdrawals in distant states and countries, thousand-dollar charges at luxury vendors, and repeated transactions with food delivery services. Regardless of how or where the fraud has been carried out, the Bank of America's DETR Debit Cards have proven highly susceptible to unauthorized use.

44. After criminals exploit the security vulnerabilities of Bank of America's DETR Debit Cards and Accounts and misappropriate Card and Account information, that information can be sold on the dark web, allowing the buyer to engage in unauthorized use of funds belonging to Cardholders.

45. Such rampant third-party fraud was readily foreseeable given the rapid growth of the number of new UI and PUA claims, as well as reports from early in the pandemic warning of the potential for fraud and exploitation of the UI and PUA benefits system by criminals. This fraud was entirely foreseeable. It is well known in the financial industry that crises, such as economic recessions, lead to an increase in scams, fraud, and other financial crimes. The early months of the Covid-19 pandemic in the United States—March through May 2020—made clear that the pandemic would be no exception. In late March 2020, the federal Coronavirus Aid, Relief, and Economic Security (CARES) Act was signed into law, injecting $2.2 trillion of relief into the American economy, including $260 billion in increased unemployment benefits, and hundreds of billions of dollars more in one-time cash payments to taxpayers and forgivable Paycheck Protection Program (PPP) loans. This rapid influx of pandemic relief to individuals and businesses, combined with rapid growth in the number of new claims for UI, PUA, and other public benefits created a "perfect environment" for fraud that was widely reported in the media, and that led to a flood of warnings from government agencies and expert nongovernmental organizations

about major increases in malicious cyber activity and financial fraud, including fraud targeting government unemployment benefits and consumer banking and credit services. Reporting during the early months of the pandemic also noted the major increases in fraudulent financial activity had, predictably, caused a corresponding increase in demand on customer service phone lines, causing many agencies and companies to hire additional customer service representatives. Bank of America nonetheless failed to take reasonable measures to prepare for, prevent, or respond to the readily foreseeable fraud as relates to its DETR Debit Card and Account.

### F. The Bank's Evasive and Ineffectual Response

46. Bank of America's ineffective response to the rampant fraud has taken various forms, including not answering the customer service phone lines it advises DETR Debit Cardholders to call; establishing "customer service" procedures that frustrate and obstruct Cardholders' efforts to file fraud claims; opening fraud claims and then closing them so soon thereafter that a full investigation could not have occurred; crediting funds and later debiting them without notice to the DETR Debit Cardholder; failing to extend provisional credit to DETR Debit Cardholders; and indefinitely freezing the Account of DETR Debit Cardholders who call Bank of America to report third-party fraud on their Account.

47. At no point have Plaintiffs received written communication— by mail, email, text, or otherwise—from the Bank regarding the ongoing widespread fraud affecting Plaintiffs' DETR Debit Card and Account, or how defrauded Cardholders should proceed, even after the Bank froze hundreds of thousands of DETR Debit Card Accounts in a desperate and heavy-handed effort to protect its own interests from the effects of the fraud. The only option presented to Plaintiffs has been to comply with Bank of America's instructions to call the

customer service number on Plaintiffs' DETR Debit Card in reliance on the Bank's representations of a "Zero Liability" policy and "24/7" customer service. Unfortunately, as Plaintiffs have learned, Bank of America's representations were, and continue to be, false. Proceeding in accordance with the Bank's policies and recommendations offers scant hope of recovering stolen funds or getting one's Account unfrozen in any reasonable time.

1. The Bank of America's Policy and Practice of Making Fraud Difficult to Report

48. The Bank has prevented many Cardholders from being able to report fraud in a timely manner, or even at all. Notwithstanding the foreseeable spike in calls that would inevitably accompany the spike in UI and PUA benefits recipients, the Bank failed (and continues to fail) to appropriately staff its customer service call centers in a manner that would allow it to honor its contractual commitments under the DETR-Bank Contract and to provide reasonable levels of assistance to the volume of DETR Debit Cardholders seeking assistance during this pandemic. As a result, when attempting to report fraud or to inquire about potential fraud, Cardholders like Plaintiffs have been kept on hold for hours, have been disconnected without warning, have waited long periods of time to speak with someone only to be told to call back later, have been transferred to various departments with no apparent end or sent to voicemail, have had to deal with unhelpful automated agents, and/or have unsuccessfully attempted to reach the Bank by email.

2. Bank of America's Policy and Practice of Automatically Denying Fraud Claims Without Investigation or Explanation

49. Even when fraud is reported, the Bank has a policy and practice of automatically and summarily denying the fraud claims of DETR Debit Cardholders without adequate investigation or explanation. Pursuant to this policy and/or practice, Cardholders who file a fraud claim do not receive

provisional credit pending investigation within the first 10 days after Cardholders file a claim. In fact, some Cardholders have never received a provisional credit.. Instead, Cardholders receive a form letter from the Bank—often dated the very same day or within a day or two of the Cardholder's report of the unauthorized transactions—stating simply that the "claim has been closed" in a form letter. The form letter does not provide any individualized information explaining what the Bank of America's investigation, if any, entailed, nor does it explain the basis for the Bank's determination.

50. That letter provides a number that Cardholders should call if they wish to "request that [Bank of America] reopen your claim for further consideration," but DETR Debit Cardholders who call the Bank to make such a request are often given erroneous information or told they cannot be helped. Even those who submit detailed documentation to the Bank substantiating fraud claims, such as sworn statements, police reports, and documentary proof of their whereabouts at the time the fraudulent transactions occurred (e.g., that they were nowhere near the ATM from which funds were withdrawn), are often ignored and go months without receiving any update from the Bank on the status of claims. Some who submit additional information simply receive yet another form letter from the Bank of America summarily reaffirming without explanation the Bank's original decision denying the fraud claim.

51. On information and belief, Bank of America adopted this policy and practice of automatically denying the fraud claims of DETR Debit Cardholders to circumvent its obligations under EFTA and Regulation E, which require the Bank to issue provisional credit within 10 days of a Cardholders' report of fraud, to complete a good-faith investigation of the claim within no more than 45 days, and thereafter to issue permanent credit absent a reasonable basis for

believing no fraud occurred. In implementing this policy and practice, the Bank sought to protect its own financial interests at the expense of legitimate claimants whose life-sustaining public benefits had been stolen.

52. Moreover, Bank of America implemented its policy and practice of automatically denying the fraud claims of DETR Debit Cardholders retroactively by rescinding "permanent" credits that the Bank had previously paid. Thus, Cardholders that had been "permanently" credited with the amount of the stolen funds and previously informed by the Bank that their fraud claims were favorably resolved, suddenly and without explanation, had that same amount debited from their DETR Debit Card Account, sometimes leaving their Account with a negative balance. As a result, when those Cardholders received their next DETR benefits payment deposit into the DETR Debit Card Account, they were not actually able to access those benefits because the new DETR benefits payments were simply credited against the negative balance in their Account that resulted from the Bank's actions.

3. The Bank of America's Policy and Practice of Automatically and Indefinitely Freezing Accounts When Cardholders Report Unauthorized Transactions

53. The Bank has an additional policy and practice of responding to DETR Debit Cardholders who report fraudulent transactions by automatically and indefinitely freezing their DETR Debit Card Account without any prior notice, explanation, or opportunity to be heard. Thus, many Cardholders have had the experience of reporting fraudulent transactions and receiving assurances from the Bank that it will cancel their old DETR Debit Card and issue a new one, only to discover that Plaintiffs' new DETR Debit Card is useless because the Bank has frozen (or locked) their DETR Debit Card Account. The Bank implements this policy and practice without first offering the Cardholders an opportunity to withdraw any remaining funds still in the Account, thus

depriving the Cardholders of access to any DETR benefits that may have been in the Account at the time. Moreover, because Bank of America will not accept DETR benefits payments from DETR for deposit into a frozen Account, the Bank's freezing of an Account cuts off the affected DETR Debit Cardholders access to the continuing DETR benefits to which the Cardholder is entitled. As a result, many DETR Debit Cardholders who are the victim of third-party fraud, and who turn to the Bank for help, suddenly find themselves indefinitely deprived of access to all DETR benefits and treated as if they are the criminals.

54. Many such individuals have been frozen out of their DETR Debit Card Account for months on end, without any information as to when their Account will be unfrozen or how they can facilitate that unfreezing. Some DETR Debit Cardholders whose Account are frozen in this manner eventually receive notice weeks or months after the fact, but that notice simply states general information about why the account may have been frozen but the notice does not advise the affected Cardholder as to what steps they can take to regain access to the Account.

55. Moreover, after Bank of America has frozen a DETR Debit Card Account in response to a report of transactional fraud, the Bank has a policy and practice of telling DETR Debit Cardholders they are required to re-establish their identity and re-verify eligibility with DETR as a condition of unfreezing the Account—even if DETR itself has not raised any question regarding the individual's identity or benefits eligibility. Bank of America imposes this onerous and unreasonable condition on Cardholders who report third-party transactional fraud regardless of whether there is a reasonable basis for suspecting them of having committed benefits eligibility fraud, and despite knowing that DETR's call center has been completely overwhelmed by the surge in unemployment benefits recipients throughout the pandemic and that

1    many individuals who call DETR will never get through.

2    56. Even after Cardholders comply with this onerous and unreasonable step of

3    contacting DETR and obtaining confirmation from DETR that they either do

4    not need to re-verify or have successfully re-verified benefit eligibility, Bank of

5    America still does not unfreeze their DETR Debit Card Account. Instead, Bank

6    of America, continues, without explanation, to deprive Cardholders of access to

7    their DETR benefits and refusing to process their fraud claims or refund their

8    stolen money, sometimes for months longer.

9    4. The Bank's Policy and Practice of Denying Meaningful Assistance to Resolve

10    Fraud Claims or Unfreeze Accounts

11    57. Desperate and confused, DETR Debit Cardholders whose fraud claims have

12    been summarily denied and/or whose DETR Debit Card Accounts have been

13    suddenly frozen have spent months calling the Bank's customer service hotline,

14    but to no avail.

15    58. The Bank has failed to appropriately staff its customer service call centers in a

16    manner that would allow it to honor its contractual commitments under the

17    DETR-Bank Contract and to provide reasonable levels of assistance to the

18    volume of DETR Debit Cardholders seeking assistance during this pandemic.

19    Further, the Bank has a policy and practice of failing to provide its customer

20    service representatives the tools or authority to assist Cardholders who call

21    seeking assistance in resolving fraud claims or unfreezing their Accounts.

22    Although the Bank at some point in the Fall of 2020 hired additional customer

23    service agents, on information and belief, those newly hired customer service

24    agents are not trained and are not empowered to investigate or resolve fraud

25    claims, and the number of customer service agents continues to be too low to

26    handle incoming calls resulting in hours-long wait times if Cardholders can get

27    through at all.

COMPLAINT                                   - 24 -

59. Despite the Bank of America's promise of 24/7 customer service, Plaintiffs and other Cardholders have found themselves repeatedly kept on hold, sometimes for hours, waiting to speak to a live agent. Plaintiffs and other Cardholders have been disconnected, hung up on, and treated rudely by overworked and overwhelmed agents. Plaintiffs and other DETR Debit Cardholders often spend hours on hold with customer service, despite Bank of America having represented in its Cardholder Agreement that "[t]elephoning is the best way of keeping your possible losses down." Even when Plaintiffs and other Cardholders do reach a customer service representative, the representative is unable to offer any meaningful assistance, often conveying false or contradicting information.

60. Bank of America's representatives also often provide erroneous information regarding the reason for the Account freezes. Countless Cardholders have been told that the Bank has no control over the freeze, that DETR is the entity responsible for the freeze, and that only DETR has the power to unfreeze DETR Debit Card Account. But when Cardholders call DETR, DETR informs them that it has no control over their DETR Debit Card Account and that the freeze is entirely within the Bank's control. Even when Cardholders re-verify their identity with DETR, DETR confirms their eligibility for DETR benefits, when Cardholders convey this information to the Bank, the Bank still does not unfreeze the Accounts. In some cases, DETR has recently resumed paying benefits to Cardholders, through paper checks, but Cardholders remain unable to access funds in their DETR Debit Card Accounts, which remain frozen.

61. Bank of America's inadequate response to DETR Debit Cardholders' issues with fraud on Plaintiffs' Card and Account results from the Bank's failure to adequately staff its customer-service and fraud-investigation departments, and from Bank procedures that are designed to, or that the Bank knows or reasonably should know will, frustrate and obstruct Cardholders' efforts to submit claims and obtain reimbursement under the EFTA and the Bank's "Zero Liability" policy.

62. Many DETR Debit Cardholders have characterized their efforts to obtain relief from the Bank for the wrongful conduct alleged herein as an "unofficial full-time job trying to get the money back."

63. Bank of America's decision to provide DETR cardholders with debit cards without EVM chips was a costly one for DETR benefit recipients like Plaintiffs. Hundreds of thousands of dollars have been stolen from Nevada's DETR card holders like Plaintiffs, thousands of accounts have been frozen and or locked because of Bank of America's decisions. In the worst unemployment crisis in Nevada's history caused by an unprecedented pandemic, Bank of America left Plaintiffs and hundreds of thousands of DETR benefit recipients stranded.

<u>**Facts specific to Plaintiffs**</u>

**Plaintiffs'  Experiences Dealing with Bank of America's Customer Service and Trying to Obtain Reimbursement and to Unfreeze Plaintiffs' Accounts**

**(1) Tiffany Yip**

64. Tiffany Yip is a resident of Nevada.

65. In August 2020, Plaintiff began receiving DETR benefits through Bank of America.

66. In September 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account.

67. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of

America via phone, email, and online.

68. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account and Plaintiff still cannot access her money

69. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed her rent payment, was evicted, missed car payment, car was repossessed, was late on credit card, cellphone, and utility bills, and was not able to afford food, clothes, gas and other necessities.

**(2) RiAnna Apodaca**

70. RiAnna Apodaca is a resident of Nevada.

71. In April 2020, Plaintiff began receiving DETR benefits through Bank of America.

72. In October 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $4,400.00.

73. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

74. In response to Plaintiff reporting the fraud, Bank of America froze the account.

75. Plaintiff's account is still frozen.

76. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was evicted, and was not able to afford food, clothing, and other necessities.

**(3) Damion Payne**

77. Damion Payne is a resident of Nevada.

78. In April 2020, Plaintiff began receiving DETR benefits through Bank of America.

79. In August 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $21,708.00.

80. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of

America via phone.

81. In response to Plaintiff reporting the fraud, Bank of America froze the account.

82. Although Plaintiff's account is now un-frozen, Plaintiff was denied a provisional credit and still cannot access his funds.

83. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was evicted, missed car payment leading to repossession, was late on utilities and cell phone bills, and was not able to afford food, clothing, and other necessities.

### (4) Dustin Lebsack

84. Dustin Lebsack is a resident of Nevada.

85. In May 2020, Plaintiff began receiving DETR benefits through Bank of America.

86. Beginning in July 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $20,000.00.

87. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

88. In response to Plaintiff reporting the fraud, Bank of America froze the account.

89. After repeated requests to Bank of America, Plaintiff was issued a new card with access to his current weekly benefits amount; however, Plaintiff was denied a provisional credit and has not been compensated for the stolen funds.

90. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was evicted, missed car payment leading to repossession, was late on utilities, cable, and credit card bills, and was not able to afford food and other necessities.

### (5) Brittney Meadows

91. Brittney Meadows is a resident of Nevada.

92. In July 2020, Plaintiff began receiving DETR benefits through Bank of

America.

93. In August 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $1,500.00.

94. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

95. In response to Plaintiff reporting the fraud, Bank of America froze the account.

96. Plaintiff was never reimbursed for the stolen funds.

97. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, missed car payment leading to repossession, and was late on utilities bills.

**(6) Jasmine Cooley**

98. Jasmine Cooley is a resident of Nevada.

99. In May 2020, Plaintiff began receiving DETR benefits through Bank of America.

100. In December 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $8,000.00.

101. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

102. In response to Plaintiff reporting the fraud, Bank of America froze the account.

103. Plaintiff was denied a provisional credit and was never reimbursed for the stolen funds.

104. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, missed car payment, was late on utilities, cable, credit card, and cell phone bills, and was not able to afford food, clothing, and other necessities.

**(7) Jessica Lumpford**

105. Jessica Lumpford is a resident of Nevada.

106. In June 2020, Plaintiff began receiving DETR benefits through Bank of

America.

107. In the Summer of 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $2,500.00.

108. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone, email, and online.

109. In response to Plaintiff reporting the fraud, Bank of America froze the account.

110. Plaintiff's account is still frozen.

111. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was evicted, was late on cell phone and electricity bills, and was not able to afford food, clothing, and other necessities.

**(8) Linette Davis**

112. Linette Davis is a resident of Nevada.

113. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

114. In March 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $7,000.00.

115. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

116. In response to Plaintiff reporting the fraud, Bank of America froze the account.

117. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment and could not afford gas for her car, clothing, and other necessities.

**(9) Jay Enos**

118. Jay Enos is a resident of Nevada.

119. In February 2020, Plaintiff began receiving DETR benefits through Bank of America.

120. Around February or March 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $800.00.

121. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone, email, and online.

122. In response to Plaintiff reporting the fraud, Bank of America froze the account.

123. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent and car payments, was late on utilities bills, and was not able to afford gas, food, clothing, and other necessities.

**(10) Shaft Prince**

124. Shaft Prince is a resident of Nevada.

125. In April 2019, Plaintiff began receiving DETR benefits through Bank of America.

126. In April 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account.

127. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America.

128. In response to Plaintiff reporting the fraud, Bank of America froze the account, then subsequently un-froze the account and issued Plaintiff a new card.

129. However, Plaintiff stopped receiving unemployment benefits that Plaintiff is still entitled to.

130. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent and car payments, was late on electric and credit card bills, and was not able to afford gas for Plaintiff's car.

**(11) Moniqua Ramos**

131. Moniqua Ramos is a resident of Nevada.

132. In April 2021, Plaintiff began receiving DETR benefits through Bank of America.

133. In May 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $400.00.

134. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America.

135. In response to Plaintiff reporting the fraud, Bank of America denied Plaintiff's claim and a provisional credit.

136. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment and was not able to afford food and other necessities.

**(12) Kiley Gomez**

137. Kiley Gomez is a resident of Nevada.

138. In March 2019, Plaintiff began receiving DETR benefits through Bank of America.

139. In March 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $800.00.

140. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

141. In response to Plaintiff reporting the fraud, Bank of America froze the account.

142. Plaintiff's account is still frozen.

143. Due to Bank of America withholding Plaintiffs' funds, Plaintiffs missed car payment leading to repossession, was late on phone, gas, and electricity bills, and was not able to afford other necessities.

**(13) Edwin Lopez**

144. Edwin Lopez is a resident of Nevada.

145. Plaintiff began receiving DETR benefits through Bank of America.

146. Over the course of one year, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $18,000.00.

147. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone and email.

148. In response to Plaintiffs reporting the fraud, Bank of America froze Plaintiff's

account.

149. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed their rent payment, was evicted, car was repossessed, was late on cellphone bill, and was not able to afford food, gas for the car, clothing, and other necessities.

**(14) Keith Nowalski**

150. Keith Nowalski is a resident of Nevada.

151. In September 2020, Plaintiff began receiving DETR benefits through Bank of America.

152. In October 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $550.00.

153. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

154. In response to Plaintiff reporting the fraud, Bank of America reimbursed the stolen money; however, a month later Bank of America took the same amount of reimbursed money back out of the account.

155. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, missed car payment leading to repossession, was late on cellphone, cable, and utilities bills, and was not able to afford gas for his car.

**(15) Robin Brown**

156. Robin Brown is a resident of Nevada.

157. In July 2019, Plaintiff began receiving DETR benefits through Bank of America.

158. In March 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $2,100.00.

159. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone, email, and online.

160. In response to Plaintiff reporting the fraud, Bank of America froze the account.

161. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was evicted, was late on cellphone bill, and was not able to afford food, gas, clothing, and other necessities.

**(16) Kevin Rader**

162. Kevin Rader is a resident of Nevada.

163. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

164. In August 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $190.00.

165. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

166. In response to Plaintiff reporting the fraud, Bank of America reimbursed the stolen money; however, a month later Bank of America took the same amount of reimbursed money back out of the account.

167. Due to Bank of America withholding Plaintiff's funds, Plaintiff was not able to afford gas for his car, clothing, and other necessities.

**(17) Tabitha Russell**

168. Tabitha Russell is a resident of Nevada.

169. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

170. In April 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $463.00.

171. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

172. In response to Plaintiff reporting the fraud, Bank of America froze the account.

173. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment which almost resulted in eviction, was not able to afford gas for her

car, clothing, food, and other necessities.

**(18) Clifton Smith**

174. Clifton Smith is a resident of Nevada.

175. In February 2020, Plaintiff began receiving DETR benefits through Bank of America.

176. In November 2020, Bank of America froze Plaintiff's account, which remained frozen until May 2021.

177. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was late on cellphone, cable, water, and electricity bills, and was not able to afford clothing.

**(19) Lorae Le Clarc**

178. Lorae Le Clarc is a resident of Nevada.

179. In July 2020, Plaintiff began receiving DETR benefits through Bank of America.

180. In December 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $1,596.70.

181. Plaintiff has reported the fraud to Bank of America via phone and email multiple times each month since Plaintiff discovered the fraud.

182. Plaintiff has never been returned the money.

183. Due to Bank of America's failure to reimburse Plaintiff's funds, Plaintiff missed rent payment, was late on electricity bill, and was not able to afford other necessities.

**(20) James Gilligan**

184. James Gilligan is a resident of Nevada.

185. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

186. In October 2020, Bank of America froze Plaintiff's account for a substantial

period of time.

187. Eventually, Bank of America un-froze the account; however, Plaintiff has never received the $3,331.00 worth of benefits that should have been deposited into the account during the time it was frozen.

188. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment and was evicted, was late on cellphone, cable, water, and electricity bills, and was not able to afford food, gas, clothing, and other necessities.

**(21) Tia Stone**

189. Tia Stone is a resident of Nevada.

190. In June 2020, Plaintiff began receiving DETR benefits through Bank of America.

191. In October 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $3,000.00.

192. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

193. In response to Plaintiff reporting the fraud, Bank of America froze the account.

194. Three weeks later, Bank of America un-froze the account; however, Plaintiff has never been reimbursed for the missing funds.

195. Due to Bank of America withholding and failing to reimburse Plaintiff's funds, Plaintiff was not able to afford gas for her car and other necessities.

**(22) Jessica Gaudet**

196. Jessica Gaudet is a resident of Nevada.

197. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

198. In February 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $175.00.

199. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of

America via phone.

200. In response to Plaintiff reporting the fraud, Bank of America froze the account.

201. Ten days later, Bank of America un-froze the account; however, Plaintiff has never been reimbursed for the missing funds.

202. Due to Bank of America withholding and failing to reimburse Plaintiff's funds, Plaintiff was late on home gas and electricity bill, had to take time off work to dispute the fraudulent transactions, and was not able to afford food, clothing, and other necessities.

**(23) Cassandra Allan**

203. Cassandra Allan is a resident of Nevada.

204. In December 2019, Plaintiff began receiving DETR benefits through Bank of America.

205. In December 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $4,221.00.

206. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone and online.

207. In response to Plaintiff reporting the fraud, Bank of America froze the account.

208. Three months later, Bank of America un-froze the account; however, Plaintiff has never been reimbursed for the missing funds or the unemployment benefits Plaintiff was entitled to during the time the account was frozen.

209. Due to Bank of America withholding and failing to reimburse Plaintiff's funds, Plaintiff missed rent and car payment leading to repossession, was late on cellphone, cable, and utilities bills, and was not able to afford food, clothing, gas for her car, and other necessities.

**(24) Christine Verser**

210. Christine Verser is a resident of Nevada.

211. In August 2020, Plaintiff began receiving DETR benefits through Bank of

America.

212. In December 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $7,000.00.

213. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

214. In response to Plaintiff reporting the fraud, Bank of America froze the account.

215. In March 2021, Bank of America returned the missing funds to the account; however, Plaintiff still does not have access.

216. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment and was evicted, missed car payment leading to repossession, was late on cellphone bill, and was not able to afford food, clothing, gas for her car, and other necessities.

**(25) Denise Kaili**

217. Denise Kaili is a resident of Nevada.

218. In February 2021, Plaintiff began receiving DETR benefits through Bank of America.

219. In April 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $45,000.00.

220. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

221. Bank of America failed to reimburse Plaintiff for the stolen funds.

222. Due to Bank of America's failure to reimburse Plaintiff's funds, Plaintiff missed rent payment and was evicted, and was not able to afford food, clothing, and other necessities.

**(26) Samantha Raynn**

223. Samantha Raynn is a resident of Nevada.

224. In March 2020, Plaintiff began receiving DETR benefits through Bank of

America.

225. In April 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $200.00.

226. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

227. Bank of America told Plaintiff they found no evidence of fraud and failed to reimburse Plaintiff for the stolen funds.

228. Due to Bank of America's failure to reimburse Plaintiff's funds, Plaintiff was not able to afford food, clothing, gas, and other necessities.

**(27) Lance Tharp**

229. Lance Tharp is a resident of Nevada.

230. In August 2020, Plaintiff began receiving DETR benefits through Bank of America.

231. In January 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $9,783.00.

232. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

233. In response to Plaintiff reporting the fraud, Bank of America froze the account.

234. Although Bank of America un-froze the account, Plaintiff still has no access to his money and never received the four months of unemployment benefits he was entitled to during the time his account was frozen.

235. Due to Bank of America's withholding and failure to reimburse Plaintiff's funds, Plaintiff was late on credit card and water bills, was forced to borrow money, and was not able to afford gas for his car and other necessities.

**(28) Kevin Thompson**

236. Kevin Thompson is a resident of Nevada.

237. In March 2020, Plaintiff began receiving DETR benefits through Bank of

America.

238. In November 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $2,060.00.

239. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

240. In response to Plaintiff reporting the fraud, Bank of America froze the account for about four months.

241. Due to Bank of America's withholding Plaintiff's funds, Plaintiff missed rent and car payments, was late on cellphone, credit card, and electricity bills, and was not able to afford food and clothing.

**(29) Anthony Greco**

242. Anthony Greco is a resident of Nevada.

243. In May 2020, Plaintiff began receiving DETR benefits through Bank of America.

244. In March 2021, Plaintiff's account was frozen.

245. When Plaintiff discovered the account was frozen, Plaintiff reported the mistake to Bank of America via phone.

246. However, Plaintiff's account is still frozen.

247. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent and car payments, was late on cellphone and electricity bills, and was not able to afford gas for his car or other necessities.

**(30) Alejandra Rodriguez**

248. Alejandra Rodriguez is a resident of Nevada.

249. In January 2020, Plaintiff began receiving DETR benefits through Bank of America.

250. In November 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $1,383.00.

251. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone, email, and online.

252. In response to Plaintiff reporting the fraud, Bank of America froze the account and Plaintiff's  account has not been reimbursed by Bank of America.

253. Due to Bank of America withholding Plaintiff's funds, Plaintiff was late on cellphone and electricity bills, was not able to afford gas for his car, clothes, and other necessities.

**(31) Cesar Pino**

254. Cesar Pino is a resident of Nevada.

255. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

256. In April 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $4,500.00.

257. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

258. In response to Plaintiff reporting the fraud, Bank of America froze the account.

259. Plaintiff's account is still frozen and Plaintiff's money has not been reimbursed.

260. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed a car payment, was late on a cellphone bill, and was not able to afford food, gas, clothing, or other necessities.

**(32) Laura Delamora**

261. Laura Delamora is a resident of Nevada.

262. In June 2020, Plaintiff began receiving DETR benefits through Bank of America.

263. In January 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $2,000.00.

264. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of

America via phone and email.

265. In response to Plaintiff reporting the fraud, Bank of America froze the account.

266. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payments and was evicted.

**(33) Crystal Francis**

267. Crystal Francis is a resident of Nevada.

268. In June 2020, Plaintiff began receiving DETR benefits through Bank of America.

269. In May 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $481.00.

270. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

271. In response to Plaintiff reporting the fraud, Bank of America froze the account.

272. Plaintiff still can't access her funds.

273. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payments and was evicted, missed car payments leading to repossession, was late on cable and electricity bills, and could not afford gas, clothing, or other necessities.

**(34) Nenescha Robinson**

274. Nenescha Robinson is a resident of Nevada.

275. In October 2020, Plaintiff began receiving DETR benefits through Bank of America.

276. In December 2020, Bank of America froze Plaintiff's account.

277. Despite Plaintiff reporting the freeze as a mistake to Bank of America, Plaintiff's account is still frozen to this day.

278. Accordingly, Plaintiff has not had access to the benefits she is entitled to.

279. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent and

car payments leading to repossession, was late on cellphone, credit card, and electricity bills, and could not afford clothing or other necessities.

**(35) Kimberly Stella Gagon**

280. Kimberly Stella Gagon is a resident of Nevada.

281. In October 2020, Plaintiff began receiving DETR benefits through Bank of America.

282. In November 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $1,600.00.

283. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

284. In response to Plaintiff reporting the fraud, Bank of America froze the account.

285. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment and was not able to afford clothing or other other necessities.

**(36) Donald McKee**

286. Donald McKee is a resident of Nevada.

287. In April 2020, Plaintiff began receiving DETR benefits through Bank of America.

288. In October 2020, Plaintiff began experiencing fraudulent transactions on Plaintiff's account totaling $600.00.

289. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

290. In response to Plaintiff reporting the fraud, Bank of America froze the account.

291. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payments and was evicted, was late on cellphone and credit card bills, and was not able to afford food and other other necessities.

**(37) Cory Sadler**

292. Cory Sadler is a resident of Nevada.

293. In May 2020, Plaintiff began receiving DETR benefits through Bank of America.

294. In April 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $483.00.

295. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone and letter.

296. In response to Plaintiff reporting the fraud, Bank of America froze the account.

297. Due to Bank of America withholding Plaintiff's funds, Plaintiff was late on cable and utilities bills.

**(38) Daniel Lopez**

298. Daniel Lopez is a resident of Nevada.

299. In January 2021, Plaintiff began receiving DETR benefits through Bank of America.

300. In May 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $665.00.

301. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

302. In response to Plaintiff reporting the fraud, Bank of America froze the account.

303. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed car payment, was late on cellphone and credit card bills, and was not able to afford gas for Plaintiff's car and other other necessities.

**(39) Rodney Richardson**

304. Rodney Richardson is a resident of Nevada.

305. In June 2020, Plaintiff began receiving DETR benefits through Bank of America.

306. In June 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $7,000.00.

307. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

308. In response to Plaintiff reporting the fraud, Bank of America froze the account.

309. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, and was not able to afford food, gas, clothing, and other other necessities.

**(40) Matthew Ozuna**

310. Matthew Ozuna is a resident of Nevada.

311. In July 2017, Plaintiff began receiving DETR benefits through Bank of America.

312. In March 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account.

313. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

314. In response to Plaintiff reporting the fraud, Bank of America froze the account.

315. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was late on cellphone, credit card, and cable bills, and was not able to afford gas, clothing, and other other necessities.

**(41) Mechteld Hardy**

316. Mechteld Hardy is a resident of Nevada.

317. In April 2020, Plaintiff began receiving DETR benefits through Bank of America.

318. In November 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $6,018.00.

319. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

320. In response to Plaintiff reporting the fraud, Bank of America froze the account

COMPLAINT                              - 45 -

for over two months.

321. Due to Bank of America withholding Plaintiff's funds, Plaintiff has accrued substantial credit card interest, has not received reimbursement for unemployment benefits that were not received during the time period the account was frozen, and was not able to afford clothing and other necessities.

**(42) Leandra Smith**

322. Leandra Smith is a resident of Nevada.

323. In April 2020, Plaintiff began receiving DETR benefits through Bank of America.

324. In June 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $5,009.00.

325. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

326. In response to Plaintiff reporting the fraud, Bank of America froze the account.

327. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payments and was evicted, missed car payments leading to repossession, was late on cable, water, and electricity bills, and was not able to afford clothing, gas, and other necessities.

**(43) Freddrick Hunter**

328. Freddrick Hunter is a resident of Nevada.

329. In August 2020, Plaintiff began receiving DETR benefits through Bank of America.

330. In February 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $10,317.00.

331. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via email.

332. In response to Plaintiff reporting the fraud, Bank of America froze the account.

333. Plaintiff's account is still frozen.

334. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payments and was evicted, missed car payment, was late on cellphone and electricity bills, and was not able to afford food, clothing, gas, and other necessities.

**(44) Larisa Joe**

335. Larisa Joe is a resident of Nevada.

336. In July 2020, Plaintiff began receiving DETR benefits through Bank of America.

337. In February 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $850.00.

338. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

339. In response to Plaintiff reporting the fraud, Bank of America dismissed Plaintiff's claim.

340. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was late on cellphone bill, and was not able to afford clothing, gas, and other necessities.

**(45) Heather Helm**

341. Heather Helm is a resident of Nevada.

342. In September 2020, Plaintiff began receiving DETR benefits through Bank of America.

343. In March 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $7,000.00.

344. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

345. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's

account.

346. Due to Bank of America withholding Plaintiff's funds, Plaintiff was late on cellphone bill, and was not able to afford food and other necessities.

**(46) Jacory Taylor**

347. Jacory Taylor is a resident of Nevada.

348. In August 2020, Plaintiff began receiving DETR benefits through Bank of America.

349. In December 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $6,600.00.

350. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone and email.

351. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

352. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was late on cellphone, credit card, and utilities bills, and was not able to afford food, gas, clothing, and other necessities.

**(47) James Brennan**

353. James Brennan is a resident of Nevada.

354. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

355. In March 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $800.00.

356. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

357. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

358. Plaintiff's account is still frozen.

359. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent and car payments, was late on cellphone, cable, and utilities bills, and was not able to afford food, gas, and other necessities.

**(48) Angel Miranda**

360. Angel Miranda is a resident of Nevada.

361. In early 2020, Plaintiff began receiving DETR benefits through Bank of America.

362. In June 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account.

363. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

364. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account for about two months.

365. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was late on electricity bill, and was not able to afford food and other necessities.

**(49) Shaun Davis**

366. Shaun Davis is a resident of Nevada.

367. In April 2020, Plaintiff began receiving DETR benefits through Bank of America.

368. Subsequently, Plaintiff experienced fraudulent transactions on Plaintiff's account.

369. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

370. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

371. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent

payment and was evicted, was late on cell phone bill, and was not able to afford food, gas, clothing, and other necessities.

**(50) Brian Hogan**

372. Brian Hogan is a resident of Nevada.

373. In May 2020, Plaintiff began receiving DETR benefits through Bank of America.

374. In September 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $260.00.

375. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

376. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

377. Due to Bank of America withholding Plaintiff's funds, Plaintiff was not able to afford basic necessities.

**(51) Richard Medlock**

378. Richard Medlock is a resident of Nevada.

379. In April 2020, Plaintiff began receiving DETR benefits through Bank of America.

380. In February 2021, Plaintiff attempted to withdrawal $16,000 out of his account.

381. In response, Bank of America froze Plaintiff's account.

382. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed car payment, was late on credit card and utilities bills, and could not afford food, gas, clothing, and other basic necessities.

**(52) James Morgan**

383. James Morgan is a resident of Nevada.

384. In June 2020, Plaintiff began receiving DETR benefits through Bank of America.

385. In November 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $1,300.00.

386. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

387. Plaintiff called Bank of America multiple times and spent over 60 hours on hold on the phone in a lengthy attempt to dispute the fraudulent transaction.

388. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was late on cellphone, cable, and electricity bills, and was not able to afford food, gas, and other basic necessities.

**(53) Tony Salazar**

389. Tony Salazar is a resident of Nevada.

390. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

391. In June 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $19,000.00.

392. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

393. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

394. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payments and was evicted, was late on cellphone and cable bills, and was not able to afford food, clothing, and other basic necessities.

**(54) Martin Placencia**

395. Martin Placencia is a resident of Nevada.

396. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

397. In December 2020, Plaintiff experienced fraudulent transactions on Plaintiff's

account totaling $1,200.00.

398. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

399. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

400. Due to Bank of America withholding Plaintiff's funds, Plaintiff was late on cellphone, credit card, cable, water, and electricity bills, and was not able to afford food, gas, and clothing.

**(55) Maria Gil**

401. Maria Gil is a resident of Nevada.

402. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

403. In October 2020, Bank of America froze Plaintiff's account.

404. Due to Bank of America withholding Plaintiff's funds, Plaintiff was late on car payment.

**(56) Mike Considine**

405. Mike Considine is a resident of Nevada.

406. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

407. In December 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $7,000.00.

408. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

409. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account for four months.

410. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payments, was late on cellphone, cable, and utilities bills, and was not able to

afford food, clothing, and other basic necessities.

**(57) Robin Woods**

411. Robin Woods is a resident of Nevada.

412. In April 2020, Plaintiff began receiving DETR benefits through Bank of America.

413. In November 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $249.00.

414. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

415. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account for about four months.

416. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent and car payments, and was not able to afford food, clothing, gas, and other basic necessities.

**(58) Tiffany Turner**

417. Tiffany Turner is a resident of Nevada.

418. In March 2021, Plaintiff began receiving DETR benefits through Bank of America.

419. In April 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $666.00.

420. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

421. Plaintiff has still not been completely reimbursed for the missing funds.

422. Due to Bank of America withholding Plaintiff's funds, Plaintiff was late on cable bill and could not afford other basic necessities.

**(59) Nicole Stoddard**

423. Nicole Stoddard is a resident of Nevada.

424. In April 2020, Plaintiff began receiving DETR benefits through Bank of America.

425. In July 2020, Plaintiff experienced fraudulent transactions on Plaintiffs' account totaling $2,000.00.

426. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

427. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account for nearly two months and unlawfully withdrew money from the account that Plaintiff received for the disputed funds.

428. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was late on cellphone bill, and could not afford food, clothing, and other basic necessities.

**(60) Sharone Walker**

429. Sharone Walker is a resident of Nevada.

430. In October 2020, Plaintiff began receiving DETR benefits through Bank of America.

431. In April 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $3,600.00.

432. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

433. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

434. Plaintiff's account is still frozen.

435. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed car payment, was late on cellphone and credit card bills, and could not afford food, gas, and other basic necessities.

**(61) Catherine O'Sullivan**

436. Catherine O'Sullivan is a resident of Nevada.

437. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

438. In September 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $1,100.00.

439. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone, email, letter, and online.

440. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

441. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment and was evicted, was late on cellphone bill, and could not afford food, gas, and other basic necessities.

**(62) Audriana Richey**

442. Audriana Richey is a resident of Nevada.

443. In April 2020, Plaintiff began receiving DETR benefits through Bank of America.

444. In March 2021, Bank of America unexpectedly closed Plaintiff's account totaling $2,995.00 worth of funds wrongfully withheld from Plaintiff.

445. In response to noticing the closed account, Plaintiff disputed this action as a mistake made by Bank of America.

446. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment and was evicted, was late on cellphone, cable, and utilities bills, and could not afford food, gas, and other basic necessities.

**(63) Carsen Guinn**

447. Carsen Guinn is a resident of Nevada.

448. In June 2020, Plaintiff began receiving DETR benefits through Bank of

America.

449. In April 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $3,000.00.

450. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

451. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

452. Plaintiff's account is still frozen.

453. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent and car payments, was late on cellphone, credit card, and utilities bills, and could not afford food, gas, clothing, and other basic necessities.

**(64) Wes Smith**

454. Wes Smith is a resident of Nevada.

455. In March 2021, Plaintiff began receiving DETR benefits through Bank of America.

456. In April 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $9,888.00.

457. When Plaintiffs discovered the fraud, Plaintiff reported the fraud to Bank of America via phone and email.

458. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

459. Plaintiff is still unable to access the missing funds.

460. Due to Bank of America withholding Plaintiff's funds, Plaintiff was late on cellphone bill, and could not afford food, gas, and other necessities.

**(65) Donaldo Perez**

461. Donaldo Perez is a resident of Nevada.

462. In August 2020, Plaintiff began receiving DETR benefits through Bank of

America.

463. In November 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $3,000.00.

464. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

465. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

466. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was late on cellphone, credit card, and water bills, and could not afford gas and other necessities.

**(66) Brandon Matlock**

467. Brandon Matlock is a resident of Nevada.

468. In February 2020, Plaintiff began receiving DETR benefits through Bank of America.

469. In April 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $5,000.00.

470. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

471. In response to Plaintiff reporting the fraud, Bank of America cancelled the cards relating to Plaintiff's account, thus, preventing Plaintiff from accessing the remaining funds in the account.

472. Plaintiff  is still unable to access the account.

473. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent and car payments, was late on credit card, cable, and utilities bills, and could not afford clothing and other necessities.

**(67) Eric Peterson**

474. Eric Peterson is a resident of Nevada.

475. In April 2020, Plaintiff began receiving DETR benefits through Bank of America.

476. In February 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $630.00.

477. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

478. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account for one month.

479. Although Plaintiff's account is now un-frozen, Plaintiff has not been reimbursed for the fraudulently stolen funds or for a $353.00 unemployment check that would have been deposited into Plaintiff's account if it was not frozen.

480. Due to Bank of America withholding Plaintiff's funds, Plaintiff was late on cable, credit card, and utilities bills, and could not afford food and other necessities.

**(68) Miguel Mendoza**

481. Miguel Mendoza is a resident of Nevada.

482. In May 2020, Plaintiff began receiving DETR benefits through Bank of America.

483. In December 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $2,000.00.

484. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

485. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

486. Plaintiff's account is still frozen.

487. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment and was evicted, missed car payment leading to repossession, was late on cable, cell phone, and utilities bills, and could not afford food, clothing, and other necessities.

**(68) Deborah Chase**

488. Deborah Chase is a resident of Nevada.

489. In June 2020, Plaintiff began receiving DETR benefits through Bank of America.

490. In December 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $3,000.00.

491. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

492. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

493. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, and could not afford food, gas, clothing, and other necessities.

**(69) Brandy Watkins**

494. Brandy Watkins is a resident of Nevada.

495. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

496. Beginning in August 2020 and continuing for several months, Plaintiff's account would be frozen every time Plaintiff used the card connected to the account.

497. Plaintiff was forced to contact Bank of America and dispute the frozen account every time Plaintiff made a purchase with the card.

498. As a result, Plaintiff was forced to take out loans, incurred about $1,000.00 in out-of-pocket fees in order to un-freeze the account, and had to wait around six

months to receive unemployment benefits.

499. Additionally, due to Bank of America withholding Plaintiff's funds, Plaintiff was late on cellphone bills, and could not afford food, gas, and other necessities.

**(70) Jose Deras**

500. Jose Deras is a resident of Nevada.

501. In June 2019, Plaintiff began receiving DETR benefits through Bank of America.

502. In 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $10,000.00.

503. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via email and text.

504. In response to Plaintiff reporting the fraud, Bank of America did not do anything and Plaintiff  still cannot access the account.

505. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was evicted, missed car payment causing the car to be repossessed, was late on cellphone, credit card, cable, gas, water, and electricity bill, and could not afford food, gas, clothing, and other necessities.

**(71) Victoria Mancilla**

506. Victoria Mancilla is a resident of Nevada.

507. In May 2020, Plaintiff began receiving DETR benefits through Bank of America.

508. In December 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $486.00.

509. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

510. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's

account.

511. Due to Bank of America withholding Plaintiff's funds, Plaintiff was forced to take out loans, missed mortgage payment, was late on cable and utilities bills, and could not afford clothing and other necessities.

**(72) Bonnie Engelby**

512. Bonnie Engelby is a resident of Nevada.

513. In March 2020, Plaintiff was supposed to begin receiving DETR benefits through Bank of America, which total around $3,283 currently that Plaintiff should have received.

514. However, Plaintiff has not had access to the account which has remained frozen since March 2020.

515. Plaintiff has continuously contacted Bank of America to un-freeze the account with no success.

516. Due to Bank of America withholding Plaintiff's funds, Plaintiffs was forced to borrow money, put Plaintiff's home in forbearance, and cannot afford other necessities.

**(73) David Luzzi**

517. David Luzzi is a resident of Nevada.

518. Plaintiffs began receiving DETR benefits through Bank of America.

519. In or around December 2019, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $2,000.00.

520. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone, email, and letter.

521. In response to Plaintiff reporting the fraud, Bank of America notified Plaintiff that they will fix the issue; however, Plaintiff was denied a provisional credit, and Plaintiff's account is still frozen.

522. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent

payment, was late on cellphone, and cable bill and could not afford food, gas, clothing, and other necessities.

**(74) Scott Kunichika**

523. Scott Kunichika is a resident of Nevada.

524. In 2020, Plaintiff began receiving DETR benefits through Bank of America.

525. In 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $5,000.00.

526. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

527. In response to Plaintiff reporting the fraud, Bank of America tried getting Plaintiff emergency cash then sent it to the wrong state and person and Plaintiff has received the money back in Plaintiff's account and the account has been un-frozen.

528. Due to Bank of America withholding Plaintiff's funds, Plaintiff could not afford food, and other necessities.

**(75) Jennifer Aquino**

529. Jennifer Aquino is a resident of Nevada.

530. In April 2020, Plaintiff began receiving DETR benefits through Bank of America.

531. In August 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $12,000.00.

532. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

533. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

534. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was late on cable and electricity bills, and could not afford food, gas,

and other necessities.

**(76) Barry Henry**

535. Barry Henry is a resident of Nevada.

536. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

537. Beginning in October 2020 and continuing in 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $20,000.00.

538. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

539. In response to Plaintiff reporting the fraud, Bank of America notified Plaintiff that they could not help Plaintiff and Plaintiff would have to reach out to the Plaintiff's pua representative. Plaintiff's account has been un-frozen but Plaintiff still cannot access the money in their account.

540. Due to Bank of America withholding Plaintiff's funds, Plaintiff was late on gas, water, and electricity bill and could not afford food, and other necessities.

**(77) James Pollins**

541. James Pollins is a resident of Nevada.

542. In April 2020, Plaintiff began receiving DETR benefits through Bank of America.

543. In January 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $980.00.

544. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

545. In response to Plaintiff reporting the fraud, Bank of America notified Plaintiff that they will get back to Plaintiff on the matter and Plaintiff received a provisional credit.

546. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed a

mortgage and car payment.

**(78) Bryan Aaron**

547. Bryan Aaron is a resident of Nevada.

548. Plaintiff began receiving DETR benefits through Bank of America.

549. In or around December 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $300.00.

550. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

551. In response to Plaintiff reporting the fraud, Bank of America notified Plaintiff that they will get back to Plaintiff on the matter then Plaintiff received a provisional credit.

552. Due to Bank of America withholding Plaintiff's  funds, Plaintiff was late on their cellphone bill.

**(79) Michael Heuer**

553. Michael Heuer is a resident of Nevada.

554. In October 2019, Plaintiff began receiving DETR benefits through Bank of America.

555. Starting in November 2020, Plaintiff experienced fraudulent transactions on Plaintiff's  account totaling $4,500.00.

556. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

557. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account and money kept disappearing from the account.

558. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent and car payments, was late on credit card, cable and electricity bills, and could not afford gas and other necessities.

**(80) Karla Aguilar**

559. Karla Aguilar is a resident of Nevada.

560. In March 2019, Plaintiff began receiving DETR benefits through Bank of America.

561. In October 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $2962.69.

562. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

563. In response to Plaintiff reporting the fraud, Bank of America blamed unemployment and un-froze Plaintiff's account.

564. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed their car payment and could not afford to pay for necessities.

**(81) Bryant Wadsworth**

565. Bryant Wadsworth is a resident of Nevada.

566. Plaintiff began receiving DETR benefits through Bank of America.

567. In or around January 2021, Plaintiff experienced fraudulent transactions on Plaintiffs' account totaling $800.00.

568. When Plaintiffs discovered the fraud, Plaintiffs reported the fraud to Bank of America via phone.

569. In response to Plaintiff reporting the fraud, Bank of America claimed that Plaintiff's sponsor froze Plaintiff's account.

570. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed their rent, cellphone, and electricity bill, and could not afford to pay for other necessities.

**(82) Keith King Jr.**

571. Keith King Jr. is a resident of Nevada.

572. In May 2020, Plaintiff began receiving DETR benefits through Bank of

America.

573. In August 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $8,000.00.

574. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

575. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

576. Plaintiff's account is still frozen.

577. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent and car payments, was late on cable, cellphone, home gas, and electricity bills, and could not afford food, gas for the car, and other necessities.

**(83) Sandra Bozeman-Hamilton**

578. Sandra Bozeman-Hamilton is a resident of Nevada.

579. In May 2020, Plaintiff began receiving DETR benefits through Bank of America.

580. In March 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $15,9600.00.

581. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone, email, text, letter, and online.

582. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account for three months.

583. Although Plaintiff's account is un-froze, Plaintiff has not been reimbursed for all of the missing funds.

584. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment and was evicted, missed car payment causing repossession, and could not afford food, clothing, and other necessities.

**(84) Michael Moren**

585. Michael Moren is a resident of Nevada.

586. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

587. In September 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $1,400.00.

588. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone, online, and through other sources.

589. In response to Plaintiff reporting the fraud, Bank of America notified Plaintiff that they had no record of the Plaintiff's account in their system, removed Plaintiff from the building, and handed Plaintiff a paper in Spanish and Plaintiff's account has been un-frozen.

590. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent, was evicted, missed car payment, and the car was repossessed, was late on credit card, and cellphone bill, and could not afford food, gas for the car, and other necessities.

**(85) Kelly Corrieri**

591. Kelly Corrieri is a resident of Nevada.

592. In July 2020, Plaintiff began receiving DETR benefits through Bank of America.

593. In November 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $5,000.00.

594. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

595. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

596. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent

1    payments and is facing threat of eviction, missed car payment, was late on

2    cable, credit card, cellphone and utilities bills, and could not afford food, gas,

3    clothing, and other necessities.

4    **(86) Robert Orlinick**

5    597. Robert Orlinick is a resident of Nevada.

6    598. In April 2020, Plaintiff began receiving DETR benefits through Bank of

7    America.

8    599. In December 2020, Plaintiff experienced fraudulent transactions on Plaintiff's

9    account totaling $800.00.

10   600. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of

11   America via phone and email.

12   601. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's

13   account.

14   602. Although Plaintiff's account has been un-frozen and the missing funds have

15   been returned, Plaintiff  has not been reimbursed for the unemployment funds

16   that should have been deposited into Plaintiff's  account during the time it was

17   frozen.

18   603. Due to Bank of America withholding Plaintiff's funds, Plaintiff was late on

19   cable, cellphone, and credit card bills, and could not afford gas and other

20   necessities.

21   **(87) Kristopher Burtz**

22   604. Kristopher Burtz is a resident of Nevada.

23   605. In 2021, Plaintiff began receiving DETR benefits through Bank of America.

24   606. In 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account

25   totaling $400.00.

26   607. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of

27   America via phone.

608. In response to Plaintiff reporting the fraud, Bank of America notified Plaintiff that Plaintiff was eligible for a provisional credit then Plaintiff's claim was closed the day after and Plaintiff had to reopen their claim. Plaintiff still does not have access to their money.

609. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payments, missed cellphone, gas, water, and electricity bills, and could not afford food, and other necessities.

**(88) Shannon Harris**

610. Shannon Harris is a resident of Nevada.

611. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

612. In March 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $1,700.00.

613. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

614. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

615. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was late on cable, cellphone, credit card, and utilities bills, and could not afford gas, clothing, and other necessities.

**(89) Tyler-James Rafferty**

616. Tyler-James Rafferty is a resident of Nevada.

617. In May 2020, Plaintiff began receiving DETR benefits through Bank of America.

618. In December 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $685.00.

619. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of

America via phone.

620. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

621. Although Plaintiff's accounts is now un-froze, Plaintiff has still not received $3,400 worth of funds taken out of Plaintiff's account by Bank of America and sent to DETR.

622. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payments, was late on car payments, union dues, utilities, and various other bills, and could not afford food, and other necessities.

**(90) Erin Kelly**

623. Erin Kelly is a resident of Nevada.

624. In May 2020, Plaintiff began receiving DETR benefits through Bank of America.

625. In June 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $1,053.84.

626. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

627. Plaintiff did not have access to these funds for about 90 days.

628. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was late on credit card bill, and could not afford food.

**(91) Michelle Morales**

629. Michelle Morales is a resident of Nevada.

630. In February 2020, Plaintiff began receiving DETR benefits through Bank of America.

631. In February 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $8,000.00

632. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of

America via phone, email, and online.

633. In response to Plaintiff reporting the fraud, Bank of America notified Plaintiff to call unemployment and Plaintiff's provisional credit was reversed, Plaintiff's account is still frozen, and Plaintiff still can't access their money.

634. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent, was evicted, Plaintiff's car was repossessed, Plaintiff was late on cable, and electricity bill, and could not afford clothing, and other necessities.

**(92) Julissa Elias**

635. Julissa Elias is a resident of Nevada.

636. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

637. In April 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $2,500.00.

638. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

639. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

640. Plaintiff's account is still frozen.

641. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent and car payments, was late on cable and electricity bills, and could not afford food and other necessities.

**(93) Marcos Parra**

642. Marcos Parra is a resident of Nevada.

643. In June 2020, Plaintiff began receiving DETR benefits through Bank of America.

644. In January 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $3,000.00.

645. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

646. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

647. Due to Bank of America withholding Plaintiff's funds, Plaintiff was unable to afford basic necessities.

**(94) Tyrone Samuel**

648. Tyrone Samuel is a resident of Nevada.

649. In February 2020, Plaintiff began receiving DETR benefits through Bank of America.

650. In February 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $10,280.00

651. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

652. In response to Plaintiff reporting the fraud, Bank of America notified Plaintiff that they froze the account.

653. Due to Bank of America withholding Plaintiff's funds, Plaintiff was evicted, was late on credit card bill, and could not afford food, clothing, and other necessities.

**(95) Atelaite Fonua**

654. Atelaite Fonua is a resident of Nevada.

655. Plaintiff is entitled to receive and has previously received DETR benefits through Bank of America.

656. In May 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $600.00.

657. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

658. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

659. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent and car payments, was late on water bill, and could not afford gas and other necessities.

**(96) Roy McDowell**

660. Roy McDowell is a resident of Nevada.

661. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

662. In November 2020 and February 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account.

663. Each time Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

664. In response to Plaintiff reporting the fraud each time, Bank of America froze Plaintiff's account.

665. Due to Bank of America withholding Plaintiff's funds multiple times, Plaintiff missed car payments, was late on cable, credit card, and utilities bills, and could not afford gas and other necessities.

**(97) Nichole Hill-Pancirov**

666. Nichole Hill-Pancirov is a resident of Nevada.

667. In June 2020, Plaintiff began receiving DETR benefits through Bank of America.

668. In June 2020, Bank of America froze Plaintiff's account.

669. Plaintiff reported the issue to Bank of America via phone and email; however, Plaintiff's account is still frozen.

670. Bank of America has denied Plaintiff access to $17,000 of Plaintiff's money.

671. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent

payments and was evicted, was late on cellphone and electricity bills, and could not afford food, gas, clothing, and other necessities.

**(98) Aleasha Conley**

672. Aleasha Conley is a resident of Nevada.

673. In April 2020, Plaintiff began receiving DETR benefits through Bank of America.

674. In December 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $4,600.00.

675. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone and email.

676. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

677. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, missed car payment causing repossession, was late on cell phone bill, and could not afford food, gas, clothing and other necessities.

**(99) Eric Deatherage**

678. Eric Deatherage is a resident of Nevada.

679. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

680. In September 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $2,500.00.

681. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

682. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

683. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was late on cellphone and utilities bills, and could not afford food,

1    gas, clothing, and other necessities.

2    **(100) Cynthia Weber**

3    684. Cynthia Weber is a resident of Nevada.

4    685. In March 2020, Plaintiff began receiving DETR benefits through Bank of
5    America.

6    686. In April 2021, Plaintiff experienced fraudulent transactions on Plaintiff's
7    account totaling $573.00.

8    687. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of
9    America via phone.

10   688. Due to Bank of America withholding Plaintiff's funds during the dispute
11   process, Plaintiff was not able to afford food and gas.

12   **(101) Steven Williams**

13   689. Steven Williams is a resident of Nevada.

14   690. In March 2021 Plaintiff began receiving DETR benefits through Bank of
15   America.

16   691. Around May 2021, Plaintiff experienced fraudulent transactions on Plaintiff's
17   account totaling $562.00.

18   692. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of
19   America via phone.

20   693. Due to Bank of America withholding Plaintiff's funds during the dispute
21   process, Plaintiff was not able to afford gas for her car.

22   **(102) Courtney J. Datlof**

23   694. Courtney J. Datlof is a resident of Nevada.

24   695. Plaintiff began receiving DETR benefits through Bank of America.

25   696. In March 2021, Plaintiff experienced fraudulent transactions on Plaintiff's
26   account totaling $1,800.00.

27   697. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of

America via phone, email, and online.

698. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

699. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was late on cellphone, credit card, and electricity bills, and could not afford food and other necessities.

**(103) Imanae Walls**

700. Imanae Walls is a resident of Nevada.

701. In 2020, Plaintiff began receiving DETR benefits through Bank of America.

702. In 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account.

703. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

704. In response to Plaintiff reporting the fraud, Bank of America notified Plaintiff that the missing money was not Bank of America's fault and Plaintiff still cannot access their money.

705. Due to Bank of America withholding Plaintiff's funds during the dispute process, Plaintiff missed their rent payment, was evicted, missed their car payment, the car was repossessed, was late on their cellphone, gas, and electricity bills, was not able to afford food, gas, and other necessities.

**(104) Alfonso Diaz**

706. Alfonso Diaz is a resident of Nevada.

707. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

708. In July 2020 and January 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $1,800.00.

709. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

710. Due to Bank of America withholding Plaintiff's funds during the dispute process, Plaintiff missed mortgage payment and was late on credit card bill.

**(105) Darrell Sanchez**

711. Darrell Sanchez is a resident of Nevada.

712. In 2020, Plaintiff began receiving DETR benefits through Bank of America.

713. In or around March 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account.

714. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

715. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account and Plaintiff still cannot access their money.

716. Due to Bank of America withholding Plaintiff's funds during the dispute process, Plaintiffs missed their rent payment, missed their car payment, was late on their cellphone, cable, gas, electricity, and water bills, and was not able to afford other necessities.

**(106) Joesaph Bennett**

717. Joesaph Bennett is a resident of Nevada.

718. In September 2020, Plaintiff began receiving DETR benefits through Bank of America.

719. Around March 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $7,000.00.

720. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

721. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

722. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed their rent and car payments, was late on their cellphone, cable, credit card, and

1    utilities bills, and was not able to afford food, gas, clothing, and other
2    necessities.

3    **(107) Jarvisthy LaCasse**

4    723. Jarvisthy LaCasse is a resident of Nevada.

5    724. In May 2019, Plaintiff began receiving DETR benefits through Bank of
6    America.

7    725. In December 2020, Plaintiff experienced fraudulent transactions on Plaintiff's
8    account totaling $783.00.

9    726. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of
10   America via phone and email.

11   727. In response to Plaintiff reporting the fraud, Bank of America froze the account.

12   728. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent
13   payment, was late on Plaintiff's  cellphone bill, home gas bill, electricity bill,
14   and was not able to afford food, clothing, and other necessities.

15   **(108) Tigist Beyene**

16   729. Tigist Beyene is a resident of Nevada.

17   730. In early 2020, Plaintiff began receiving DETR benefits through Bank of
18   America.

19   731.  In early 2020, Plaintiff experienced fraudulent transactions on Plaintiff's
20   account totaling $2,000.00.

21   732. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of
22   America via phone.

23   733. In response to Plaintiff reporting the fraud, Bank of America notified Plaintiff
24   that their claim was not approved.

25   734. Due to Bank of America withholding Plaintiff's funds, Plaintiffs  was late on
26   their credit card, and utilities bills, and was not able to afford food, and other
27   necessities.

**(109) Cloy Flores**

735. Cloy Flores is a resident of Nevada.

736. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

737. In February 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $420.00.

738. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

739. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

740. Plaintiff's  account is still frozen.

741. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed their rent payment.

**(110) Patricia Terry**

742. Patricia Terry is a resident of Nevada.

743. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

744. Around January 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $3924.00.

745. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

746. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account and Plaintiff still cannot access their money.

747. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed their car payment, was late on cellphone bill, and was not able to afford gas, clothing, and other necessities.

**(111) Michael Raines**

748. Michael Raines is a resident of Nevada.

749. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

750. In April 2020, Plaintiff experienced fraudulent transactions on Plaintiff's accounts totaling $793.00.

751. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

752. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

753. Due to Bank of America withholding Plaintiff's  funds, Plaintiff was late on home gas and electricity bills.

**(112) Krystal Segoviano**

754. Krystal Segoviano is a resident of Nevada.

755. Plaintiff began receiving DETR benefits through Bank of America.

756. In March 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $380.00.

757. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

758. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account for around two months.

759. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was late on credit card, cellphone, cable, and utilities bills, and was not able to afford food, gas, clothing, and other necessities.

**(113) Kevin Hayes**

760. Kevin Hayes is a resident of Nevada.

761. Plaintiff began receiving DETR benefits through Bank of America.

762. In July 2020, Plaintiff's account was initially froze.

763. Subsequently, starting in January 2021 Plaintiff stopped having access to unemployment benefits which should have been deposited into Plaintiff's account.

764. Currently, Plaintiff has wrongfully been denied access to $3,200.00 worth of unemployment benefits.

765. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent and car payments, was late on cellphone and electricity bills, and was not able to afford food and gas.

**(114) Cromwell Ramos**

766. Cromwell Ramos is a resident of Nevada.

767. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

768. Plaintiff later experienced fraudulent transactions on Plaintiff's account totaling $360.00.

769. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone, email, and online.

770. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account and denied Plaintiff's claim.

771. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, was late on cellphone bill, and could not afford necessities.

**(115) Shianne Taylor**

772. Shianne Taylor is a resident of Nevada.

773. In March 2020, Plaintiff began receiving DETR benefits through Bank of America.

774. Subsequently, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $200.00.

775. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

776. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

777. Due to Bank of America withholding Plaintiff's funds, Plaintiff couldn't afford electricity, food, or gas.

**(116) Tyrance Tyler**

778. Tyrance Tyler is a resident of Nevada.

779. Plaintiff began receiving DETR benefits through Bank of America.

780. Subsequently, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $2,174.35.

781. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

782. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

783. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment causing eviction, missed car payment, was late on credit card and utilities bills, and was not able to afford gas and other necessities.

**(117) Gabriel Cervantes**

784. Gabriel Cervantes is a resident of Nevada.

785. In or around 2021, Plaintiff began receiving DETR benefits through Bank of America.

786. In or around 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $12,000.00.

787. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone and email.

788. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's

account.

789. Plaintiff's account is still frozen.

790. Due to Bank of America withholding Plaintiff's funds, Plaintiff is now homeless, was late on cellphone bill, and was not able to afford food, clothing, and other necessities.

**(118) Megan Cordrey**

791. Megan Cordrey is a resident of Nevada.

792. In or around 2021, Plaintiff began receiving DETR benefits through Bank of America.

793. In or around 2021, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $19,000.00.

794. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

795. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

796. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed rent payment, missed car payment causing repossession, was late on cellphone bill, and was not able to afford food, gas, and other necessities.

**(119) Ebony Anderson**

797. Ebony Anderson is a resident of Nevada.

798. In or around 2020, Plaintiff began receiving DETR benefits through Bank of America.

799. In or around 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $4,000.00.

800. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

801. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's

account for around two months.

802. Due to Bank of America withholding Plaintiff's funds, Plaintiff missed car payment, was late on credit card bill, and was not able to afford food, gas, clothing, and other necessities.

**(120) Antonio Davila**

803. Antonio Davila is a resident of Nevada.

804. In or around 2020, Plaintiff began receiving DETR benefits through Bank of America.

805. In or around 2020, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $12,000.00.

806. In October 2020, Plaintiff reported the fraud to Bank of America via phone.

807. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

808. Due to Bank of America withholding Plaintiff's funds, Plaintiff was late on credit card, cellphone, and home gas bills, and was not able to afford food, gas for the car, clothing, and other necessities.

**(121) Martin Silva**

809. Martin Silva is a resident of Nevada.

810. Plaintiff began receiving DETR benefits through Bank of America.

811. Subsequently, Plaintiff experienced fraudulent transactions on Plaintiff's account totaling $1,400.00.

812. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of America via phone.

813. In response to Plaintiff reporting the fraud, Bank of America froze Plaintiff's account.

814. Due to Bank of America withholding Plaintiff's  funds, Plaintiff missed rent payment causing eviction, was late on cellphone bill, and was not able to afford

1    food, gas, and other necessities.

2    **(122) Sean Whiteside**

3    815. Sean Whiteside is a resident of Nevada.

4    816. In December 2019, Plaintiff began receiving DETR benefits through Bank of

5         America.

6    817. Between December 2020 and April 2021, Plaintiff experienced fraudulent

7         transactions on Plaintiff's account totaling $1,100.00.

8    818. When Plaintiff discovered the fraud, Plaintiff reported the fraud to Bank of

9         America via phone.

10   819. In response to Plaintiff reporting the fraud, Plaintiff was notified that it is

11        DETR's problem and Bank of America froze Plaintiff's account.

12   820. Due to Bank of America withholding Plaintiff's funds, Plaintiff was late on

13        cellphone bill, and was not able to afford food, gas for the car, and other

14        necessities.

15                        **First Cause of Action**

16   **VIOLATIONS OF THE ELECTRONIC FUNDS TRANSFER ACT**

17        **(15 U.S.C. §§1693 et seq & 12 C.F.R. §§1005.1 et seq)**

18   821. Plaintiffs repeat, re-allege, and incorporate by reference, all other paragraphs of

19        the Complaint as though fully stated herein.

20   822. Plaintiffs bring this cause of action pursuant to the United States Electronic

21        Funds Transfer Act ("EFTA"), 15 U.S.C. §§1693 et seq and 12 C.F.R.

22        §§1005.1–1005.20 (Regulation E of the EFTA).

23   823. Plaintiffs provided notice to Bank of America within 60 days after Bank of

24        America sent a period statement reflecting an unauthorized transaction (which

25        is an "error" under Regulation E) thereby triggering the error resolution

26        requirements of 15 U.S.C. §1693f and 12 C.F.R. §1005.11.

27   824. Bank of America violated 15 U.S.C. §1693f and Regulation E, 12 C.F.R.

§1005.11 through its implementation of each of the following policies and/or practices:

a. adopting and implementing policies and practices designed to circumvent the Bank's statutory and regulatory obligations under 15 U.S.C. §1693f and Regulation E, including by frustrating and obstructing Plaintiffs' efforts to submit a fraud claim and by denying Plaintiffs' fraud claim without investigation;

b. not correcting an error within one business day after it determined an error occurred;

c. not crediting Plaintiffs for interest or fees it charged related to the error.

d. not issuing provisional credit within the first 10 business days of Plaintiffs reporting fraud despite having no intention of completing a good-faith investigation of the fraud claim within 10 business days, and despite not completing a good-faith investigation of Plaintiffs' fraud claims within 10 business days;

e. failing to conduct good-faith investigations into the error or unauthorized transactions that were timely reported by Plaintiffs;

f. failing to conduct a good faith investigation into the error or unauthorized transactions that were timely reported by Plaintiffs within 45 days of the date that the alleged error or unauthorized transaction were reported;

g. denying Plaintiffs' claims of error without having conducted a good faith investigation and without providing an explanation of its findings;

h. denying Plaintiffs' claims of error without having a reasonable basis for concluding that Plaintiffs' Accounts were not in error, and where the Bank could not reasonably have drawn its conclusion that no error occurred based on the evidence available to the Bank at the time;

i. failing to credit Plaintiffs' DETR Debit Card Accounts with interest on the

amounts of the fraudulent transaction for the period during which Plaintiffs were without access to the funds;

j.  freezing Plaintiffs'  DETR Debit Card Accounts in order to avoid the Bank's legal obligations and to prevent Plaintiffs from accessing Plaintiffs' funds.

825. In situations where Bank of America has violated Regulation by failing to provisionally recredit Plaintiffs' DETR Debit Card Accounts, the Bank has neither conducted a good faith investigation nor had a reasonable basis for believing that the Accounts were not in error. Plaintiffs are therefore entitled to treble damages under 15 U.S.C. §1693f(e).

826. Bank of America knowingly and willfully concluded that Plaintiffs'  DETR Debit Card Accounts were not in error when such conclusion could not reasonably have been drawn from the evidence available to the Bank at the time of its investigation. Plaintiffs are therefore entitled to treble damages under 15 U.S.C. §1693f(e).

827. Bank of America violated EFTA and Regulation E by failing to limit Plaintiffs' liability as required by 15 U.S.C. §1693m and 12 C.F.R. §1005.6(b).

828. Plaintiffs provided notice to Bank of America less than two business days after learning of the fraudulent transactions that occurred in Plaintiffs'  DETR Debit Card Accounts. Under 12 C.F.R. §1005.6(b)(1), Plaintiffs'  liability is capped at $50 in these circumstances. Bank of America has subjected Plaintiffs to far greater than $50 in liability through its wrongful conduct as alleged herein.

829. Under 12 C.F.R. §1005.6(b)(2), $500 is the maximum liability that may be imposed on an account holder who does not provide notice to the financial institution within two business days after learning of a suspected unauthorized transaction. Bank of America has subjected Plaintiffs to far greater than $500 in liability through its wrongful conduct as alleged herein.

830. Even if Plaintiffs had not provided Bank of America with actual notice within two business days of learning of a suspected unauthorized transactions, Bank of America was on constructive notice, under 12 C.F.R. §1005.6(b)(5)(iii), of widespread unauthorized electronic funds transfers from DETR Debit Card Accounts since the beginning of the COVID-19 pandemic. Since that time, countless unauthorized fund transfers have occurred and continue to occur from those Accounts. The volume of calls from DETR Debit Cardholders to Bank of America's customer service to report unauthorized transactions has been, and continues to be, so great, and the Bank's customer service department is so understaffed, that the Bank routinely causes DETR Debit Cardholders to wait on hold for multiple hours. The widespread fraud specifically targeting DETR Debit Cardholders has been widely reported in the media and has been the subject of significant attention from Nevada legislators.

831. In no event should Plaintiffs be liable for over $500 of damages under 12 C.F.R. §1005.6. Bank of America has violated 12 C.F.R. §1005.6 by imposing thousands of dollars of liability on Plaintiffs .

832. As a direct and proximate result of Bank of America violations of Regulation E, Plaintiffs have lost money.

833. For violations of the EFTA, Plaintiffs seek the following relief: a.) actual damages with interest; b.) restitution of all DETR benefits funds improperly debited by Bank of America;   c.) statutory damages; d.) treble damages pursuant to 15 U.S.C. § 1693f(e); e.) incidental and consequential damages suffered due to Plaintiffs'  inability to pay bills or otherwise use Plaintiffs' unemployment funds; and   f.) an injunction barring Bank of America from illegally debiting DETR benefits and otherwise violating EFTA and Regulation E.

**Second Cause of Action**

**VIOLATIONS OF FEDERAL DUE PROCESS UNDER**

**THE 14TH AMENDMENT**

**(42 U.S.C. §1983)**

834. Plaintiffs repeat, re-allege, and incorporate by reference, all other paragraphs of the Complaint as though fully stated herein.

835. The Due Process Clause of the Fourteenth Amendment prohibits any state actor from "depriv[ing] any person of . . . property, without due process of law." U.S. Const. amend. XIV.

836. Every person who, under color of [law], subjects, or causes to be subjected, any . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," is "liable to the party injured in an action as law [or] suit in equity." 42 U.S.C. §1983.

837. For purposes of the actions alleged herein, Bank of America is a state actor and acted "under color" of law because it is engaged in a joint undertaking with the State to provide and administer UI and other DETR benefits under a mutually beneficial relationship and because it performs a function that is both traditionally and exclusively governmental.

838. Plaintiffs' UI, PUA, and other DETR benefits are constitutionally protected property interests.

839. By freezing Plaintiffs' DETR Debit Card Accounts, Bank of America (1) cut off Plaintiffs' access to DETR benefits already deposited to Plaintiffs' Accounts and (2) suspended Plaintiffs' receipt of any future DETR benefits to which Plaintiffs may be entitled.

840. Bank of America's policy and/or practice of automatically freezing Plaintiffs' DETR Debit Card Accounts when Plaintiffs reported unauthorized transactions without affording any prior notice or pre-deprivation hearing, or any prompt

1    and meaningful post-deprivation opportunity to be heard, violated Plaintiffs'

2    due process rights under the Fourteenth Amendment to the U.S. Constitution.

3    841. For violations of The Due Process Clause of the Fourteenth Amendment,

4    Plaintiffs seek the following relief: actual damages; nominal damages;

5    restitution of all DETR benefits funds improperly frozen by Bank of America;

6    and consequential damages suffered due to Plaintiffs' inability to pay bills or

7    otherwise use Plaintiffs' unemployment funds; and an injunction barring Bank

8    of America from freezing DETR Debit Card Accounts without prior notice and

9    a pre-deprivation hearing.

### Third Cause of Action

### VIOLATIONS OF THE NEVADA DUE PROCESS CLAUSE

### (Nev. Const. Art. I, §8(2))

13    842. Plaintiffs repeat and incorporate by reference each and every allegation set forth

14    above, as though fully set forth herein.

15    843. The Nevada Constitution's due process clause provides, "A person may not be

16    deprived of life, liberty, or property without due process of law." Nev. Const.

17    art. I, §8(2).

18    844. Plaintiffs' DETR benefits are constitutionally protected property interests.

19    845. Bank of America's policy and/or practice of automatically and indefinitely

20    freezing Plaintiffs' DETR Debit Card Accounts when Plaintiffs reported

21    unauthorized transactions without affording any prior notice or pre-deprivation

22    hearing, or any prompt and meaningful post-deprivation opportunity to be

23    heard, violates Plaintiffs' due process rights under the Nevada Constitution.

24    Plaintiffs seek the following relief: actual damages; nominal damages;

25    restitution of all DETR benefits funds improperly frozen by Bank of America;

26    incidental and consequential damages suffered due to Plaintiffs' inability to pay

27    bills or otherwise use Plaintiffs' unemployment funds; and an injunction barring

Bank of America from freezing DETR Debit Card Accounts without prior notice and a pre-deprivation hearing.

**Fourth Cause of Action**

**VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**

**(NRS 598, et Seq.)**

846. Plaintiffs repeat and incorporate by reference each and every allegation set forth above, as though fully set forth herein.

847. Bank of America's unfair acts and business practices include, among other things, the Bank's actions or inactions in:

    a.  failing to maintain, store, use, or transfer Plaintiffs' DETR Debit Card and Account information in a secure manner;

    b.  failing to issue DETR Debit Cards with EMV chips, despite having for years been aware of the risks associated with magnetic stripe technology;

    c.  failing to respond to the rise in demand for DETR benefits caused by or related to the COVID-19 pandemic by issuing chip card;

    d.  falsely representing to Plaintiffs and DETR that it would provide "best-in-class" fraud monitoring;

    e.  failing to protect Plaintiffs from fraud by not using the readily available EMV chip technology in its DETR Debit Cards rather than the outdated magnetic stripe technology that the Bank knew was susceptible to fraud;

    f.  failing to provide reasonable or adequate customer service assistance to Plaintiffs who complained of fraud, despite representing that such assistance would be available "24/7," and despite the Bank's awareness of rampant third-party fraud on DETR Debit Cards and Accounts;

    g.  establishing "customer service" procedures designed to frustrate and

obstruct Plaintiffs from filing fraud claims;

h. failing to adequately investigate and resolve Plaintiffs' claims of unauthorized transactions in a timely manner despite the Bank's promised "Zero Liability" policy for unauthorized transactions;

i. failing to extend provisional credit to Plaintiffs when the Bank was unable to timely investigate and resolve Plaintiffs' fraud claims;

j. automatically denying Plaintiffs' claims of unauthorized transactions without investigation, explanation, or reasonable basis;

k. freezing Plaintiffs' DETR Debit Card Accounts without a reasonable basis for believing that the Plaintiffs had committed fraud, and for longer than it would reasonably take to investigate any such belief, all while failing to provide Plaintiffs any reasonable means of contesting the purported basis for the Account freeze;

l. freezing Plaintiffs' DETR Debit Card Accounts not to protect Plaintiffs, but to protect the Bank's own interests; and

m. failing to provide reasonable or adequate customer service to Plaintiffs when Plaintiffs were seeking assistance in obtaining reimbursement for third-party fraud on Plaintiffs' Account or helping Plaintiffs access Plaintiffs' frozen Account, despite the Bank's representations.

848. Bank of America's acts, omissions, and conduct as alleged herein are deceptive trade practices under NRS 598 because those acts, omissions, and conduct offend public policy and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiffs. The harm caused by Bank of America's conduct outweighs any potential benefits attributable to such conduct. There were reasonably available alternatives to further the Bank's legitimate business interests, including issuing DETR Debit Card with EMV chips and creating and implementing procedures

and resources adequate to timely conduct good-faith investigations into reported unauthorized transactions and to otherwise timely resolve reports of fraudulent activity on DETR Debit Card Account.

849. Bank of America has engaged in "unlawful" acts and business practices by violating the Due Process Clauses of the U.S. and Nevada Constitutions and multiple laws, including the Electronic Funds Transfer Act, 15 U.S.C. §1693, and Regulation E; the Nevada Consumer Privacy Act; the Gramm-Leach-Bliley Act, 15 U.S.C. §§6801 et seq.; and its common law obligations as set forth herein.

850. Bank of America has engaged in deceptive trade practices because it made false representations to DETR Debit Cardholders like Plaintiffs that its prepaid debit cards are a "[f]aster, easier and more secure" way to receive benefit payments, that Cardholders would incur "Zero Liability" for unauthorized transactions, that it would provide "dedicated customer service representatives" "available 24 hours a day, 7 days a week" to help "investigate transactions" and "process lost/stolen/damages card reports," and that it would issue provisional credits within 10 days if unable to complete its investigation and would complete all error investigations within 45 days. These false representations were likely to deceive, and did deceive, Plaintiffs into (a) using the Bank's DETR Debit Card services to receive DETR benefits (instead of, for example, opting to receive DETR benefits by paper check) and (b) using the Bank's DETR Debit Card services with the level of ordinary care that a consumer would use with a credit or debit card, rather than with a level of hyper-vigilance that a reasonable person might exercise if Plaintiffs knew that the card was highly susceptible to hacks, that the Bank would not hold Plaintiffs harmless for third-party fraud, and that the Bank would not offer Plaintiffs meaningful customer service support in the face of such fraud but would instead keep Plaintiffs on hold for

1    hours and offer no solutions even after weeks and months of calls.

2    851. As a result of Bank of America's violations of the Act, Plaintiffs have suffered

3    injury in fact and lost money or property, including but not limited to the funds

4    lost to fraud that have not been reimbursed, any fees paid to Bank of America,

5    and lost interest that would have accrued on funds during the period of time

6    when the funds were unavailable due to Bank of America's failure to timely and

7    adequately investigate claims of unauthorized transactions and other violations

8    of NRS 598.

9    852. Plaintiffs    is entitled to restitution and other equitable relief, including

10    injunctive relief (a) prohibiting Bank of America from continuing its unfair,

11    unlawful, and deceptive business practices, and (b) requiring Bank of America

12    to take reasonable measures to prevent future unauthorized use of DETR Debit

13    Card and Account, and (c) requiring Bank of America to ensure timely and

14    adequate processing of DETR Debit Cardholders' claims regarding

15    unauthorized or fraudulent use of their DETR Debit Card or Account

**Fifth Cause of Action**

**NEGLIGENCE AND NEGLIGENCE PER SE**

18    853. Plaintiffs repeat and incorporate by reference each and every allegation set forth

19    above, as though fully set forth herein.

20    854. Bank of America owed a duty to Plaintiffs to act reasonably to:

21    a. safeguard Plaintiffs' UI and other DETR benefits;

22    b. protect Plaintiffs from fraudulent access by unauthorized third parties to

23    the funds paid into Plaintiffs' DETR Debit Card Accounts, including

24    failing to timely and accurately warn Plaintiffs of suspicious activity in

25    those Accounts;

26    c. protect Plaintiffs from unreasonable interference with Plaintiffs' rights

27    and ability to continue to collect, receive, and access the DETR benefits

to which Plaintiffs were and are entitled to receive;

d. ensure that the Bank's customer service staffing levels, technology, and operations were capable of providing Plaintiffs reasonably timely and effective customer service, including to address Plaintiffs' concerns about fraudulent or unauthorized transactions related to Plaintiffs' DETR Debit Cards or Accounts;

e. provide Plaintiffs reasonable and adequate notice that Plaintiffs' DETR Debit Cards and Accounts were at risk of being subject to unauthorized use or had been subjected to unauthorized use;

f. timely and adequately investigate and resolve Plaintiffs' claims regarding unauthorized or fraudulent transactions; and

g. extend to Plaintiffs provisional credit when Bank of America failed to timely resolve Plaintiffs' fraud-related claims.

855. Bank of America breached its duty to Plaintiffs by, among other things:

a. failing to transfer or store Plaintiffs' DETR Debit Cards and Accounts information in a secure manner;

b. failing to issue Plaintiffs an DETR Debit Card with an EMV chip, despite having been well aware for years of the risks associated with magnetic stripe technology;

c. failing to protect Plaintiffs from fraudulent access by unauthorized third parties to the funds paid into Plaintiffs' DETR Debit Card Accounts, including by providing timely and accurate warnings of suspicious activity in the Accounts;

d. failing to respond to the dramatic increase in DETR benefits and DETR benefits recipients caused by or related to the COVID-19 pandemic by issuing DETR Debit Cards with EMV chips to all new and existing DETR Debit Cardholders and by taking other reasonably prudent security

measures to prevent fraudulent and unauthorized transactions;

e. failing to ensure its customer service operation was capable of providing reasonably timely and effective assistance to Plaintiffs, including when Plaintiffs were the victims of fraudulent or unauthorized transactions;

f. failing to give reasonable and adequate notice to Plaintiffs that their DETR benefits were and remain at risk of being vulnerable to fraudulent and unauthorized transactions;

g. failing to process Plaintiffs' claims regarding fraudulent or unauthorized transactions in a reasonable timely and adequate manner, including by unreasonably automatically freezing Plaintiffs' Account without prior notice, reasonable investigation, or an opportunity to be heard; and

h. failing to extend provisional credit to Plaintiffs when Bank of America failed to resolve Plaintiffs' claims regarding fraudulent or unauthorized transactions in a reasonably timely and adequate manner.

856. Bank of America's misconduct concerning its failure to safeguard Plaintiffs' funds is inconsistent with industry standards, which prescribe using EMV chip technology in debit card.

857. Bank of America's misconduct concerning its failure to adequately protect Plaintiffs' data is inconsistent with its obligations under the Nevada law, the Gramm-Leach-Bliley Act, 15 U.S.C. §§6801 et seq., and customary industry practice, as well as its own policies and procedures for its non-DETR debit and credit card Account, each of which are secured through EMV chip technology. Plaintiffs are within the classes of persons that each of the aforementioned statutes are designed to protect, and Bank of America's conduct caused the precise harm to Plaintiffs that each statute was designed to prevent.

858. Bank of America's failure to comply with NRS 598, the Gramm-Leach-Bliley Act, 15 U.S.C. §§6801 et seq., constitutes negligence per se.

859. The harms inflicted upon Plaintiffs were reasonably foreseeable because the Bank was and is well aware of the security risks associated with magnetic stripe technology, and knew or should have known that its customer service resources and/or procedures were insufficient to consider, evaluate, and appropriately resolve issues stemming from the significant increase in DETR benefits and DETR benefits recipients due to the sharp rise in unemployment in the State of Nevada caused by or related to the COVID-19 pandemic, as well as the well-publicized sharp rise in financial fraud during the COVID-19 pandemic, both of which would foreseeably lead to an increased demand for customer service by Cardholders for all purposes, including for the purpose of reporting and attempting to resolve claims of fraudulent or unauthorized transactions. As a direct and proximate result of Bank of America's misconduct, Plaintiffs have been deprived of Plaintiffs' DETR benefits and have failed to receive accrued interest thereon.

**Sixth Cause of Action**

**BREACH OF CONTRACT**

860. Plaintiffs repeat and incorporate by reference each and every allegation set forth above, as though fully set forth herein.

861. Plaintiffs  entered into a Cardholder Agreement with the Bank that requires the Bank to administer DETR benefits to Plaintiffs through a prepaid debit card.

862. The Cardholder Agreement provides, among other things:

> Under the Bank of America 'zero liability' policy, you may incur no liability for unauthorized use of your Card up to the amount of the transaction, provided you notify us within a reasonable time of the loss or theft of your Card, Card number or PIN or its unauthorized use, subject to the following terms and conditions… We will determine whether an error occurred within 10 business days after we hear from you — and will correct any error promptly. If we need more time, however, we may take up to 45

days to investigate your complaint or question. If we decide to do this, we will credit your Account within 10 business days for the amount you think is in error, so that you will have the money during the time it takes us to complete our investigation.

863. The Agreement limits the circumstances under which the Bank may deprive DETR Debit Cardholders of access to funds by freezing their DETR Debit Card Accounts. As relevant here, the Cardholder Agreement provides that if the Bank "suspect[s] irregular, unauthorized, or unlawful activities may be involved" with the Account, it may freeze the Account, but only "pending an investigation of such suspected activities."

864. Plaintiffs performed all or substantially all of the material requirements that Plaintiffs' Cardholder Agreement with Bank of America imposed on Plaintiffs, and Plaintiffs fulfilled all conditions precedent to Bank of America's performance, including, among other things, by contacting or attempting to contact Bank of America to reimburse Plaintiffs for fraudulently appropriated funds within the time specified in the Cardholder Agreement.

865. Bank of America breached its promises to Plaintiffs in its Cardholder Agreement by, among other things:

    a.  failing to timely investigate and resolve Plaintiffs' fraud claims;

    b.  failing to reimburse Plaintiffs for unauthorized transactions;

    c.  failing to provide Plaintiffs with provisional credit when the Bank's investigation into Plaintiffs' fraud claims exceeded 10 business days;

    d.  failing to limit Plaintiffs' liability for unauthorized transactions;

    e.  freezing Plaintiffs' DETR Debit Card Account without a reasonable basis for suspecting irregular, unauthorized, or unlawful activities in the Account, and beyond the length of time necessary for a reasonable

1    investigation;

2    f.  freezing Plaintiffs' DETR Debit Card Account for reasons other than
3        those specified in the Cardholder Agreement;

4    g.  failing to make funds available to Plaintiffs for Plaintiffs' use on the day
5        the Bank was instructed by the DETR to fund Plaintiffs' Account; and

6    h.  otherwise failing to make funds available to Plaintiffs in accordance with
7        DETR's instructions.

8    866. Plaintiffs were harmed by Bank of America's conduct and have suffered actual
9        damages in an amount equal to the difference in the value of the banking
10       services for which Plaintiffs provided valuable consideration and the banking
11       services Plaintiffs received.

12                          **Seventh Cause of Action**
13                     **BREACH OF IMPLIED CONTRACT**

14   867. Plaintiffs repeat and incorporate by reference each and every allegation set forth
15       above, as though fully set forth herein.

16   868. Bank of America agreed to and was obligated to take reasonable steps to ensure
17       that DETR Debit Card Accounts were secure against unauthorized transactions
18       and that any claims regarding unauthorized transactions were adequately
19       investigated and resolved.

20   869. All parties understood that such protections and customer service obligations
21       were integral and essential to Bank of America's business.

22   870. Bank of America was obligated to provide Plaintiffs with DETR Debit Card
23       services that were suitable for Plaintiffs' intended purpose of preserving and
24       accessing DETR benefits as needed (rather than providing debit card services
25       that failed to take reasonable steps to safeguard Plaintiffs' money), Bank of
26       America failed to warn or notify Plaintiffs that Plaintiffs' DETR Debit Card or
27       Account was at risk of unauthorized use, and failed to adequately investigate or

1    resolve Plaintiffs' claims regarding unauthorized transactions.

2    871. Bank of America did not take reasonable steps to protect Plaintiffs' deposited

3    funds from unauthorized transactions or to adequately investigate or resolve

4    claims regarding unauthorized transactions. In fact, Bank of America willfully

5    violated those interests by electing to issue DETR Debit Cards with outdated

6    magnetic stripe technology, which it knew to be uniquely vulnerable to fraud,

7    rather than using the same EMV chip technology that the Bank has included in

8    all of its other consumer credit card and debit card for more than six years, for

9    the express purpose of protecting against fraud.

10   872. Because Bank of America failed to take reasonable steps to protect Plaintiffs'

11   funds from being appropriated through unauthorized transactions and failed to

12   take reasonable steps to timely or adequately respond to Plaintiffs' claims

13   regarding unauthorized transactions, Bank of America breached its implied

14   contract with Plaintiffs.

15   873. Bank of America's failure to fulfill its obligations to take reasonable steps to

16   protect Plaintiffs' funds from being appropriated through unauthorized

17   transactions, and its failure to take reasonable steps to timely or adequately

18   respond to claims regarding unauthorized transactions resulted in Plaintiffs

19   receiving banking services that were of less value than Plaintiffs provided

20   consideration for.

### Eighth Cause of Action

### BREACH OF IMPLIED COVENANT

### OF GOOD FAITH AND FAIR DEALING

24   874. Plaintiffs repeat and incorporate by reference each and every allegation set forth

25   above, as though fully set forth herein.

26   875. There is a covenant of good faith and fair dealing implied in every contract and

27   every implied contract. This implied covenant requires each contracting party to

refrain from doing anything to injure the right of the other to receive the benefits of the agreement. To fulfill its covenant, a party must give at least as much consideration to the interests of the other party as it gives to its own interests.

876. The covenant of good faith and fair dealing implied in the Bank's Cardholder Agreement with Plaintiffs obligated the Bank, at a minimum:

    a. to take reasonable and necessary steps to safeguard Plaintiffs' DETR benefits, including in light of the foreseeable and actual rise in the number of DETR Debit Cardholders and the amount of financial fraud caused by or related to the COVID-19 pandemic;

    b. to ensure that its customer service operation was capable of providing reasonably adequate and effective assistance to Plaintiffs who experienced fraud on Plaintiffs' DETR Debit Cards or Accounts;

    c. to warn or notify Plaintiffs that their public benefit funds were subject to, or at risk of being subject to, actual or suspected unauthorized use;

    d. to timely and adequately investigate and resolve Plaintiffs' claims of unauthorized transactions involving Plaintiffs' DETR Debit Cards or Accounts;

    e. to extend provisional credit to Plaintiffs when Plaintiffs' fraud claims were not timely resolved;

    f. to freeze Plaintiffs' DETR Debit Card Accounts only to protect Plaintiffs from third-party fraud and only for the period necessary to conduct a reasonable investigation into whether third-party fraud occurred;

    g. to make DETR benefits deposited into Plaintiffs' Accounts immediately available to Plaintiffs and not to freeze Plaintiffs' Accounts without a reasonable basis for believing that the Plaintiffs had committed fraud; and

h. to not freeze Plaintiffs' Accounts out of concern for the Bank's own potential liability for third-party fraud.

877. Bank of America breached the implied covenant of good faith and fair dealing by, among other things:

    a. failing to take reasonable and necessary steps to safeguard Plaintiffs' benefits, including but not limited to:

        i. failing to issue Plaintiffs DETR Debit Cards with EMV chip technology;

        ii. failing to secure Plaintiffs' DETR Debit Cards and Accounts information and other sensitive personal information that could be used by third parties to effect unauthorized transactions;

        iii. failing to adequately monitor for fraudulent or suspected fraudulent transactions on Plaintiffs' DETR Debit Cards and Accounts; and

        iv. failing to promptly issue Plaintiffs DETR Debit Cards with an EMV chip and to increase its efforts with respect to securing personal information, fraud monitoring, and otherwise safeguarding benefits in light of the foreseeable and actual rise in the number of DETR Debit Cardholders and the amount of financial fraud caused by or related to the COVID-19 pandemic.

    b. failing to ensure its customer service operation was capable of providing effective assistance to Plaintiffs who experience fraud on Plaintiffs' DETR Debit Cards or Accounts, including during the COVID-19 pandemic;

    c. failing to warn or notify Plaintiffs that their DETR benefits were and remain subject to, or at risk of being subject to, actual or suspected unauthorized use;

    d. failing to timely or adequately process and investigate Plaintiffs' claims

regarding unauthorized transactions;

e. failing to extend provisional credit to Plaintiffs when Plaintiffs' fraud claims were not timely resolved;

f. freezing Plaintiffs' DETR Debit Card Accounts without a reasonable basis for believing that Plaintiffs had committed fraud, and for longer than it would reasonably take to investigate any such belief;

g. failing to provide Plaintiffs any reasonable means of contesting the Bank's purported basis for freezing Plaintiffs' DETR Debit Card Accounts or for otherwise having Plaintiffs' Accounts unfrozen; and

h. freezing Plaintiffs' DETR Debit Card Accounts not to protect Plaintiffs, but rather to protect the Bank itself, from liability for third-party fraud.

878. As a direct and proximate result of Bank of America's breaches of the implied covenant of good faith and fair dealing, Plaintiffs have suffered actual losses and damages.

**Ninth Cause of Action**

**BREACH OF FIDUCIARY DUTY**

879. Plaintiffs repeat and incorporate by reference each and every allegation set forth above, as though fully set forth herein.

880. Plaintiffs, as public benefits recipients, are members of a uniquely vulnerable segment of the population, who depend on the prompt and accurate payment of the UI, PUA, and other DETR benefits to obtain basic necessities of life, including food and shelter.

881. When Plaintiffs submitted claims for UI, PUA, and other DETR benefits to DETR and was found eligible to receive those benefits, Plaintiffs were not given the choice of receiving those benefits through debit card issued by any financial institution other than Bank of America. Bank of America holds the exclusive contract to implement and administer DETR's public benefits

programs and is the only financial institution authorized to pay DETR benefits to program beneficiaries through the use of bank-issued prepaid debit cards.

882. In order to obtain the Bank-issued DETR Debit Card needed to access Plaintiffs' DETR Debit Card Account, which is the default way of receiving DETR benefits, Plaintiffs were required to provide a broad range of private and confidential information, including information pertaining to Plaintiffs' income, public benefits, employment status, finances, social security numbers, addresses, email address, telephone number, and all debit card account information.

883. The Bank, in turn, was provided access to all such personal, confidential, and financial information from Plaintiffs, which the Bank stored and maintained, purportedly in confidence, and which the Bank was required to strictly maintain in confidence without public access or other disclosure absent the DETR Debit Cardholders' written consent. The Bank was also delegated the responsibility and authority to determine when, why, and how to deny Plaintiffs access to DETR benefits, to which Plaintiffs were entitled, by freezing Plaintiffs' DETR Debit Card Accounts.

884. Plaintiffs, as DETR benefits recipients who did not opt out of the default option of receiving Plaintiffs' DETR benefits payments through DETR Debit Card, were repeatedly assured that an DETR Debit Card was a "[f]aster, easier and more secure" way to receive Plaintiffs' benefit payments and that the DETR Debit Card and Account were secure from fraud, and Plaintiffs placed their trust and confidence in the Bank at all material times, including with respect to all of Plaintiffs' personal, confidential, and financial information and with respect to the Bank's ongoing maintenance of that information in confidence, without secretion or divulgence absent Plaintiffs' express written consent.

885. Bank of America owed, and continues to owe, a fiduciary duty to Plaintiffs. By

virtue of its position as the financial institution charged with implementing DETR benefits programs, which gave the Bank delegated authority to determine when, why, and how to deny Plaintiffs access to DETR benefits to which Plaintiffs are entitled by freezing Plaintiffs' DETR Debit Card Account, and by virtue of its unbridled access to Plaintiffs' personal, confidential, and financial information, and because of the Bank's superior knowledge, business responsibilities and duties—including those provided by law or statute— and its absolute ability to control or otherwise manipulate Plaintiffs' DETR Debit Card Account data in its system, the Bank assumed a fiduciary duty to Plaintiffs  not to deny access to Plaintiffs' Account funds without reasonable basis, and to secure and maintain the personal, confidential, and financial information that it received from Plaintiffs, free from unauthorized intrusion, theft, or other disclosure.

886. As a result of this relationship of trust and confidence, the unique nature of Plaintiffs' DETR Debit Card Account that contains only DETR benefits, the highly confidential nature of the records and data pertaining to Plaintiffs' DETR Debit Card Account, and the Bank's duties to maintain the privacy of such information, the Bank owed Plaintiffs the highest degree of loyalty, honesty, fidelity, trust, and due care in its fiduciary obligations with respect to ensuring Plaintiffs  was not denied access to Plaintiffs'  Account funds, and with respect to securing and maintaining the privacy of Plaintiffs' personal, confidential, and financial data in the Bank's possession. In order to comply with such duty, the Bank was required to use its utmost ability to ensure that Plaintiffs  was not denied access to Plaintiffs' Account funds, and to protect, preserve, and secure Plaintiffs'  private data and confidential information from unauthorized access, fraud, or theft and to take all necessary steps in order to do so, including encrypting such information and deploying sufficient data access

security controls, EMV chips, and other measures, to frustrate and disable hackers, skimmers, cloners, or others from accessing such information for their personal profit or unlawful goals.

887. Based on the acts or omissions alleged above, Bank of America breached its fiduciary duties to Plaintiffs by failing to take all adequate and necessary steps to ensure Plaintiffs were not denied access to Plaintiffs' Account funds without a reasonable basis, and to preserve, secure, and maintain the confidentiality and privacy of Plaintiffs' DETR Debit Card and Account and Plaintiffs' personal, confidential, and financial data. The Bank independently breached its fiduciary duties to Plaintiffs by failing to timely, fully, and adequately disclose that it had not taken the necessary steps to protect Plaintiffs' information from unauthorized or fraudulent access and theft and that Plaintiffs' information was at a heightened risk of breach by virtue of the Bank's data security failings and policies.

888. Bank of America recklessly or knowingly breached its fiduciary duty and consciously denied Plaintiffs' access to Plaintiffs' DETR Debit Card Account funds without reasonable basis, and it created an environment that made its data systems and Plaintiffs' DETR Debit Card Accounts and Plaintiffs' access to DETR benefits prey to criminal hackers and thieves. Alternatively, and without prejudice to the foregoing, the Bank also breached its fiduciary duty by placing its own desire to achieve greater profits ahead of the financial security, privacy, and data security interests of Plaintiffs.

889. As a direct and proximate result of the Bank's violations of its fiduciary duty, Plaintiffs have been injured and have suffered and will continue to suffer economic and non-economic losses in an amount to be determined according to proof at trial, and a constructive trust has been formed in which the Bank is an involuntary trustee for the benefit of Plaintiffs concerning the Account funds

1    that Plaintiffs have lost or has been unable to access.

2                        **Tenth Cause of Action**

3          **BREACH OF CONTRACT (THIRD-PARTY BENEFICIARIES)**

890. Plaintiffs repeat and incorporate by reference each and every allegation set forth above, as though fully set forth herein.

891. Bank of America and the State of Nevada DETR entered into the DETR-Bank Contract, which is a valid and legally enforceable contract that requires Bank of America to administer DETR benefits to Plaintiffs through DETR Debit Cards and Accounts.

892. In seeking to obtain the Bank-DETR Contract and as a material term of that contract, the Bank represented to DETR that the Bank would protect the DETR benefits deposited into DETR Debit Card Accounts by implementing strict and secure anti-fraud measures, and that it would provide reasonable and adequate customer service to DETR Debit Cardholders sufficient to ensure that any claims of fraud would be promptly considered, fully and fairly investigated, and timely resolved without hardship or cost to blameless Cardholders, including Plaintiffs.

893. As DETR benefits recipients, DETR Debit Cardholders, and DETR Debit Card Account holder, Plaintiffs are intended third-party beneficiaries of the DETR Bank Contract. Plaintiffs would benefit from performance of the contract, providing that benefit was a motivating purpose of the contracting parties entering into the contract and permitting Plaintiffs to pursue a claim for breach of the contract seeking specific performance is consistent with the contract's objectives and the reasonable expectations of the contracting parties at the time of contracting.

894. Plaintiffs, and DETR performed all or substantially all of the material conditions imposed on them by the Bank-DETR Contract and fulfilled any and

all conditions precedent to Bank of America's performance.

895. Bank of America failed to perform as promised in the Bank-DETR Contract by, among other things:

    a. failing to take adequate steps to prevent fraud on Plaintiffs' DETR Debit Card and Account, including but not limited to failing to adequately monitor for fraudulent and suspected fraudulent transactions, failing to adequately detect fraudulent and suspected fraudulent transactions, failing to deploy reasonable and adequate technologies and human resources to monitor for and detect fraudulent and suspected fraudulent transactions, failing to promptly notify Plaintiffs of Bank-detected fraudulent or suspected fraudulent transactions, and failing to issue Plaintiffs an DETR Debit Card that incorporates EMV chip technology;

    b. failing to timely perform good-faith investigations of unauthorized transactions involving Plaintiffs' DETR Debit Card and Account;

    c. failing to timely resolve Plaintiffs' claims of unauthorized transactions involving Plaintiffs' DETR Debit Card and Account, including failing to have a reasonable basis for its determination that challenged transactions were in fact authorized by Plaintiffs;

    d. failing to timely reimburse Plaintiffs for unauthorized transactions on Plaintiffs' DETR Debit Cards and Accounts;

    e. failing to timely provide provisional credit to Plaintiffs when the Bank's investigation of fraud claims exceeded 10 business days;

    f. failing to provide Plaintiffs with the type of consistent, quality customer service specified in the DETR-Bank Contract; and

    g. failing to make commercially reasonable efforts in the context of the COVID-19 pandemic to provide the kind, level, amount, and quality of customer service to Plaintiffs that reasonably should have been provided

1    in the context of the COVID-19 pandemic.

2    896. Plaintiffs were harmed by Bank of America's conduct in breaching the
3    DETR-Bank Contract and have suffered actual damages in an amount equal to
4    the difference in the value of the banking services that Plaintiffs were
5    contractually entitled to receive and the value of banking services that Plaintiffs
6    actually received.

7    **Eleventh Cause of Action**

8    **BREACH OF IMPLIED COVENANT OF**

9    **GOOD FAITH AND FAIR DEALING**

10    **(THIRD-PARTY BENEFICIARIES)**

11    897. Plaintiffs repeat and incorporate by reference each and every allegation set forth
12    above, as though fully set forth herein.

13    898. There is a covenant of good faith and fair dealing implied in every contract and
14    every implied contract. This implied covenant requires each contracting party to
15    refrain from doing anything to injure the right of the other party or intended
16    third-party beneficiaries to receive the benefits of the agreement. To fulfill its
17    covenant, a party must give at least as much consideration to the interests of the
18    other party as it gives to its own interests.

19    899. The covenant of good faith and fair dealing implied in the DETR-Bank
20    Contract obligated the Bank, at a minimum:

21    a. to take reasonable and necessary steps to safeguard Plaintiffs' benefits,
22    including in light of the foreseeable and actual rise in the number of
23    DETR Debit Cardholders and the amount of financial fraud caused by or
24    related to the COVID-19 pandemic;

25    b. to ensure that its customer service operation was capable of providing
26    reasonably adequate and effective assistance to Plaintiffs who
27    experienced fraud on Plaintiffs' DETR Debit Card Account;

c. to warn or notify Plaintiffs that Plaintiffs' DETR benefit funds were subject to, or at risk of being subject to, actual or suspected unauthorized use;

d. to timely and adequately investigate and resolve Plaintiffs' claims of unauthorized transactions involving Plaintiffs' DETR Debit Card or Account;

e. to extend provisional credit to Plaintiffs when Plaintiffs' fraud claims were not timely resolved;

f. to freeze Plaintiffs' Accounts only to protect Plaintiffs from third-party fraud and only for the period necessary to conduct a reasonable investigation into whether third-party fraud occurred;

g. to make DETR benefits deposited into Plaintiffs' Accounts immediately available to Plaintiffs and not to freeze Plaintiffs' Accounts without a reasonable basis for believing that Plaintiffs had committed fraud; and

h. to not freeze Plaintiffs' Accounts out of concern for the Bank's own potential liability for third-party fraud.

900. Bank of America breached the implied covenant of good faith and fair dealing by, among other things:

a. failing to take reasonable and necessary steps to safeguard Plaintiffs' DETR benefits, including but not limited to:

    i. failing to issue Plaintiffs DETR Debit Cards with EMV chip technology;

    ii. failing to secure Plaintiffs' DETR Debit Cards and Accounts information and other sensitive personal information that could be used by third parties to effect unauthorized transactions;

    iii. failing to adequately monitor for fraudulent or suspected fraudulent transactions on Plaintiffs' DETR Debit Cards and Accounts; and

iv.  failing to promptly issue Plaintiffs DETR Debit Cards with an EMV chip and to increase its efforts with respect to securing Plaintiffs' personal information, fraud monitoring, and otherwise safeguarding benefits in light of the foreseeable and actual rise in the number of DETR Debit Cardholders and the amount of financial fraud caused by, or related to, the COVID-19 pandemic;

b.  failing to ensure its customer service operation was capable of providing effective assistance to Plaintiffs who experience fraud on Plaintiffs' DETR Debit Card Accounts, during the COVID-19 pandemic;

c.  failing to warn or notify Plaintiffs that Plaintiffs' DETR benefits were and remain subject to, or at risk of being subject to, actual or suspected unauthorized use;

d.  failing to timely or adequately process and investigate Plaintiffs' claims regarding unauthorized transactions;

e.  failing to extend provisional credit to Plaintiffs when their fraud claims were not timely resolved;

f.  freezing Plaintiffs' DETR Debit Card Accounts without a reasonable basis for believing that the Plaintiffs had committed fraud, and for longer than it would reasonably take to investigate any such belief;

g.  failing to provide Plaintiffs any reasonable means of contesting the Bank's purported basis for freezing Plaintiffs' DETR Debit Card Account or for otherwise having Plaintiffs' Account unfrozen; and

h.  freezing Plaintiffs' DETR Debit Card Accounts not to protect Plaintiffs, but rather to protect the Bank itself from liability for third-party fraud.

901. As a direct and proximate result of Bank of America's breaches of the implied covenant of good faith and fair dealing, Plaintiffs have suffered actual losses and damages.

**Prayer for relief**

902. Wherefore, Plaintiffs pray that judgment be entered against Defendant, and Plaintiffs be awarded damages from Defendant, as follows:

- For declaratory preliminary and permanent injunctive relief ordering the Bank to take each of the following corrective actions:
  - reopen Plaintiffs' fraud claims and permanently credit Plaintiffs for the amount of the reported fraud;
  - unfreeze Plaintiffs' Debit Card Accounts that were frozen by the Bank;
  - issue Plaintiffs Debit Cards with an EMV chip;
  - provide an effective means, such as a secure request form on the Bank's website and an email address by which Plaintiffs may easily initiate a fraud claim regarding unauthorized transactions on Plaintiffs' Debit Card Account.
- for an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiffs, including treble damages where authorized by law, double damages where authorized by law, damages provided for under NRS 41.1395, disgorgement, unjust enrichment, restitution, a declaration that the Bank holds the Account funds in constructive trust for the benefit of Plaintiffs, and all other available relief under applicable law, including but not limited to accrued interest for the periods during which Plaintiffs were deprived of funds in Plaintiffs' Debit Card Accounts due to unauthorized transactions;
- for an award of punitive damages pursuant to applicable law;
- for reasonable attorney's fees and expenses as permitted by Nevada law, including NRS 18, 42 U.S.C. §1988, and any other applicable statute or law;

- for taxable costs;
- for pre- and post-judgment interest as allowed by law; and
- for any other relief the Court deems just.

**Jury Demand**

903. Pursuant to the Seventh Amendment to the Constitution of the United States of America, and the Nevada Constitution, Plaintiffs demand a trial by jury.

Dated: July 1, 2021.

Respectfully submitted,

KIND LAW

 /s/ Michael Kind
Michael Kind, Esq.
8860 South Maryland Parkway, Suite 106
Las Vegas, Nevada 89123

FREEDOM LAW FIRM

 /s/ George Haines
George Haines, Esq.
Gerardo Avalos, Esq.
8985 S. Eastern Ave., Suite 350
Las Vegas, Nevada 89123
*Counsel for Plaintiffs*