Kelly H. Dove
Nevada Bar No. 10569
Snell & Wilmer
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, Nevada 89169
Tel.: 702.784.5200
Email: kdove@swlaw.com

James W. McGarry (*pro hac vice*)
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Email: jmcgarry@goodwinlaw.com

Yvonne Chan (*pro hac vice*)
Jones Day
100 High Street
Boston, MA 02210
Tel.: 617.449.6914
Email: ychan@jonesday.com

*Attorneys for Defendant*
*Bank of America, N.A.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TIFFANY YIP, et al.,<br><br>                        Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>                        Defendant. | Case No. 2:21-cv-01254-ART-EJY<br><br>**DEFENDANT BANK OF AMERICA, N.A.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>**HEARING REQUESTED**<br><br>Judge:  Hon. Anne R. Traum |

**INTRODUCTION**

Each of the 224 Plaintiffs must satisfy their pleading obligations in order for their claims to survive dismissal. But rather than addressing BANA's arguments for dismissal and identifying facts to support each of their claims, Plaintiffs instead seek safety in numbers, asserting that *none* of their claims should be dismissed because it is possible that *some* of those claims might survive. For example, all Plaintiffs assert claims based on BANA's alleged failure to prevent and respond to fraud, yet some Plaintiffs do not allege any fraud on their accounts. Likewise, they ask the Court to ignore plainly time-barred claims simply because there are "over 200" Plaintiffs. But this case is not a class action. That the claims of 224 individuals have been joined in one lawsuit means only that 224 individual sets of claims must be analyzed, each on their own merits, within the same lawsuit. Applying this well-established analytical framework, the FACC must be dismissed because each Plaintiff's claims lack both a factual and a legal basis.

**ARGUMENT**

**I.     PLAINTIFFS HAVE NOT STATED A CLAIM UNDER EFTA/REG E (COUNT 1).**

**A.     Time-Barred Claims Cannot Survive a Motion to Dismiss Simply Because Other Plaintiffs' Claims May Be Timely.**

BANA identified 71 Plaintiffs whose EFTA/Reg E claims are time-barred on the face of the FACC. As such, dismissal is plainly appropriate. Mot. at 4. Plaintiffs concede as much, "agree[ing] that . . . certain claims may [be] barred by the applicable statute of limitations." Opp. at 4. Plaintiffs nevertheless argue that these 71 claims should not be dismissed because "over 200 Plaintiffs brought their claims in a single complaint." *Id*. Unsurprisingly, Plaintiffs cite no law for this proposition. As it must, the FACC seeks "*individual* relief for *each* of the plaintiffs," and therefore "*each* plaintiff's right to relief" rests on "the operative facts giving rise to an enforceable right in favor of that *plaintiff*." *Bautista v. LA. Cnty.*, 216 F.3d 837, 840 (9th Cir. 2001) (emphasis added). Each plaintiff must plead a timely claim, and 71 here do not.

Nor can Plaintiffs save their claims through some "exception[] to the statute." Opp. at 5. To the extent Plaintiffs are referring to the discovery rule, courts have repeatedly held that EFTA

REPLY ISO MOTION TO DISMISS               1               CASE NO. 2:21-cv-01254-ART-EJY

claims accrue when the alleged injury occurs—not when it is discovered. *See Salls v. Digital Fed. Credit Union*, 349 F. Supp. 3d 81, 93 (D. Mass. 2018) (dismissing EFTA claims because the "discovery rule does not apply as a matter of law"); *Walbridge v. Northeast Credit Union*, 299 F. Supp. 3d 338, 351 (D.N.H. 2018) (discovery rule does not apply to EFTA claims).

As for equitable tolling, Plaintiffs allege no facts to even suggest that "some extraordinary circumstance stood in [the] way and prevented timely filing" for the 71 Plaintiffs at issue. *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (describing requirements for equitable tolling). Indeed, the "threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Oliver v. Nevada*, 2020 WL 5606901, at *4 (D. Nev. Sept. 17, 2020) (equitable tolling is "unavailable in most cases"). Plaintiffs' unsupported, unexplained assertion that discovery would allow them to show tolling cannot save their claims. *See Walbridge,* 299 F. Supp. 3d at 351 n.10 (plaintiff's "perfunctory reference to equitable tolling [of their EFTA claim] [was] insufficient to invoke its protection"); *Woodruff v. Bank of Am., N.A.*, 2018 WL 11461338, *10 (N.D. Ga. Dec. 4, 2018) (rejecting equitable tolling of EFTA claim for 92-year-old plaintiff who did not allege bank prevented her from accessing the courts).

### B. Plaintiffs Fail to State a Claim Under EFTA/Reg E.
#### 1. EFTA/Reg E Do Not Cover All of Plaintiffs' Disputes.

The FACC specifically premises all Plaintiffs' EFTA claims on unauthorized transactions. FACC ¶¶ 293-294. Plaintiffs who do not allege an unauthorized transaction therefore have not stated a claim as pled. *See Hardin v. Bank of Am., N.A.*, 2022 WL 3568568, at *3 (E.D. Mich. Aug. 18, 2022) (dismissing EFTA claims where allegations about errors other than unauthorized transactions "were not in the amended complaint").[1]

Plaintiffs acknowledge that a number of them did not experience an unauthorized transaction but respond that they nevertheless experienced an error when BANA froze their accounts. *See* Opp. at 6.[2] But even if Plaintiffs had pled their EFTA claim to cover errors other

---

[1] Despite Plaintiffs' criticism of *Hardin* as "improper" to cite "at this point in the pleadings," Opp. at 6, *Hardin* granted BANA's motion to dismiss at the pleadings stage.

[2] Two Plaintiffs (Dominique Palombo, FACC ¶ 96, and Tabitha Mayfield, *id.* ¶ 97) do not allege

REPLY ISO MOTION TO DISMISS          2          CASE NO. 2:21-CV-01254-ART-EJY

than unauthorized transactions, an account freeze is not an "error" under EFTA. *See* Mot. at 5. Plaintiffs recognize that nothing in the statute defines "error" to include account freezes, pointing instead to the provision defining an error as "any other error described in regulations of the" Consumer Financial Protection Board ("CFPB"). Opp. at 6. But the CFPB regulation defining "error" likewise does not include account freezes, 12 C.F.R. § 1005.11(a)(1), and Plaintiffs do not cite to any other regulation to support their argument. Plaintiffs cite only to a CFPB consent order regarding accounts frozen based on a "fraud filter."[3] *Id.* Even putting aside that the consent order post-dates the activities at issue here, "a consent order . . . by definition is not [a] 'law, rule, or regulation.'" *Wolf v. Pac. Nat. Bank*, 2010 WL 5888778, at *4 (S.D. Fla. Dec. 28, 2010); *see also* Mot. at 12 n.5. Plaintiffs have therefore failed to state a Section 1693f claim for any Plaintiff who does not allege that they experienced an unauthorized transaction.

### 2. Plaintiffs Fail to Allege a Violation of EFTA/Reg E.

Even those Plaintiffs who allege an unauthorized transaction under EFTA/Reg E have nevertheless failed to allege sufficient facts to plead a violation. Mot. at 6. In response to BANA's arguments, Plaintiffs point to only three individual Plaintiffs' allegations, which they assert "represent a subset of the overall factual allegations alleged by all plaintiffs," Opp. at 7. But Plaintiffs fail to explain how the arguments they raise with respect to these three Plaintiffs apply to any other Plaintiff. As this is not a class action, Plaintiffs must demonstrate that each of them has stated a claim, even if there are arguments that can be applied to more than one Plaintiff. *See supra*, p. 1. Plaintiffs make no attempt to show that the arguments they make as to Napoleon, Delamora, and Allan apply to any of the other hundreds of plaintiffs, and Plaintiffs have therefore waived any argument as to the sufficiency of the factual allegations for the Plaintiffs they do not address.

---

that they experienced either an unauthorized transaction or an account freeze, and they have therefore failed to allege any EFTA error, even under Plaintiffs' (incorrect) theory. Plaintiffs' Opposition separately asserts that one Plaintiff—Daylon Russell (Opp. at 6 n.3)—alleged an EFTA error because he reported an "error" in the form of missing funds, but the Opposition makes no attempt to tie these allegations to any definition of "error" under EFTA/Reg E.

[3] Plaintiffs point to no facts to show that their accounts were frozen based on this filter. Regardless, the consent order did not find that an account freeze was an "error" under EFTA; it did not even mention account freezes with respect to the EFTA and Reg E findings. Opp., Ex. A at 20–26.

1  *Duensing v. Gilbert*, 2013 WL 1316890, *5 n. 3 (D. Nev. March 1, 2013).

2      As for the three Plaintiffs that are addressed, Plaintiffs still fail to show that they have stated a claim under EFTA/Reg E. To start, Plaintiffs respond to BANA's argument that they did not provide the statutorily required notice by adding allegations that do not exist in the FACC. The Opposition asserts, for example, that "Allen [sic] stated the reasons she believed her account contained an error – the unauthorized transactions on her account statements pursuant to § 1693f(a)(3)." Opp. at 10. But the FACC says only that she "repoted [sic] the fraud to Bank of America the first week of December 2020." FACC ¶ 139. That is insufficient. *See* Mot. at 6; *see also Eikleberry v. Washoe Cty.*, 2013 WL 5881711, *2 (D. Nev. Oct. 30, 2013) (deficient pleading cannot be cured through the opposition to the motion to dismiss).

    Moreover, while the FACC raised a laundry list of alleged EFTA violations, Plaintiffs attempt to defend only two: (1) the failure to issue a provisional credit, and (2) the failure to provide a written explanation. Opp. at 6-11. Plaintiffs have therefore waived any argument based on other violations. *Duensing*, 2013 WL 1316890, at *5 n.3.[4] Plaintiffs also fail to show that these three Plaintiffs (or any other) have stated a claim with respect to either of these two theories of violation. First, BANA was obligated to provide a provisional credit only when it did not complete an investigation within 10 business days, but Plaintiffs allege only that the Bank did not issue a credit within 10 business days—not that the Bank had failed to complete its investigation by that date.[5] As for the theory that BANA failed to provide a written explanation, the Opposition fails to identify facts to show that any, never mind all, of the Plaintiffs did not receive the required explanation. Instead, the Opposition again cites to facts that appear nowhere in the FACC, asserting, for example, that Napoleon never received a written explanation of BANA's findings, when the FACC contains no such allegation. FACC ¶ 85 (Napoleon's single

---

[4] Specifically, the Opposition fails to respond to BANA's argument that Plaintiffs failed to plead facts supporting their allegations that BANA did not (1) properly investigate and resolve their claims (FACC ¶ 294(a), (e)-(h)); (2) correct an alleged error within one business day (*id.* ¶ 294(b)); and (3) credit Plaintiffs with interest and fees (*id.* ¶ 294(c), (i)).

[5] The Opposition also fails to address BANA's argument that Plaintiffs who admit they received a provisional credit should be dismissed, Mot. at 7.

REPLY ISO MOTION TO DISMISS      4      CASE NO. 2:21-CV-01254-ART-EJY

paragraph of allegations with no assertion that she did not receive written correspondence). Plaintiffs cannot save their claim by adding new allegations in the Opposition. *See supra*, p. 4.

## II. PLAINTIFFS' DIRECT CONTRACT-RELATED CLAIMS MUST BE DISMISSED (COUNTS 6-8).

### A. The Breach of Contract Claim (Count 6) Must Be Dismissed.

#### 1. Plaintiffs Have Not Stated a Claim Based on Timely Investigation or Reimbursement of Unauthorized Transaction Claims.

Plaintiffs' first theory of contract breach (based on BANA's allegedly insufficient response to reported unauthorized transactions) fails for many of the same reasons as their EFTA claim, including the failure to even allege an unauthorized transaction for 56 Plaintiffs. Mot. at 9. Plaintiffs rely wholesale on the *Hamilton* Opposition in their attempt to defend their contract theory based on unauthorized transactions. Opp. at 11. Those arguments fail for the reasons explained in BANA's Reply to the *Hamilton* Opposition. *Hamilton* Reply at 1-4. Further, the *Hamilton* Opposition does not address the 24 Plaintiffs in this case who have no contract claim because they allege they were fully reimbursed and have therefore received all available contract damages. Mot. at 9 n.10.

#### 2. Plaintiffs Have Not Pled a Breach Based on Account Freezes.

Plaintiffs have not stated a breach of contract claim based on account freezes because the Account Agreement expressly permits BANA to freeze accounts if it "suspect[s]" fraud. Mot. at 10. In response, Plaintiffs do not address the contractual language or point to any allegations showing that BANA froze accounts for any reason inconsistent with the contract. Instead, Plaintiffs refer to a consent order about a "fraud filter" and "account freezes." Opp. at 11. But the relevant portion of the consent order involved provisions of the Consumer Financial Protection Act that have nothing to do with the Account Agreement. Opp., Ex. A at 1. As for the Account Agreement itself, Plaintiffs do not explain how the use of a "fraud filter" to freeze accounts violated Section 2—which expressly allows BANA to freeze accounts upon suspicion of fraud—nor do any of them allege that their accounts were frozen as a result of the filter, and the Account Agreement requires no notice or "reasonable basis" when BANA freezes an account based on a suspicion of fraud. Mot., Ex. 1 § 2 (BANA's authority to freeze accounts); *Hardin*,

2022 WL 3568568, at *5 (materially equivalent agreement "included no 'reasonable basis' requirement to freeze the account").

### 3. Plaintiffs Have Failed to Allege a Factual Basis for Concluding that BANA Disregarded Funding Instructions From DETR.

Plaintiffs' final contract theory, that account freezes breach the contract provisions requiring BANA to fund accounts as instructed by DETR, is also contradicted by the express language of the Account Agreement permitting BANA to freeze accounts. *See* Mot. at 11. Plaintiffs do not respond to this argument, and thus waive any objection to it. *Duensing*, 2013 WL 1316890 at *5 n.3.

As for BANA's argument that Plaintiffs have alleged no facts to support their claim that BANA disregarded any instructions from DETR, Plaintiffs respond only that allegations based on "information and belief" are "proper in a complaint." Opp. at 12. But "information and belief" cannot amount to mere "speculation," and a factual basis is still required. *Club Vista Financial Srvcs., LLC v. Maslon, Edelman, Borman & Brand, LLP*, 2010 WL 3021889, *5 (D. Nev. July 29, 2010). Plaintiffs have offered no factual basis to show that funding instructions from DETR were disregarded for *any* of the 224 Plaintiffs, let alone *all* of them. The Opposition asserts that its allegations regarding the failure to follow instructions are supported by the CFPB and OCC Orders (Opp. at 12), but neither order even mentions funding instructions from DETR—nor is either order mentioned in the FACC. Plaintiffs cannot baldly assert that their allegations are sufficiently supported without identifying a single *fact* showing that BANA disregarded instructions for any of the 224 Plaintiffs.

### B. Plaintiffs Have Not Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 8).

In response to BANA's argument that their implied covenant claim seeks to impose obligations that extend beyond, contradict, or duplicate the terms of the express contract, Plaintiffs simply repeat their assertion that every contract implies a duty of good faith. From there they assert, without any support in either the contract or case law, that BANA broadly promised Plaintiffs would receive their benefits "in the easiest and fastest way," such that

REPLY ISO MOTION TO DISMISS     6     CASE NO. 2:21-CV-01254-ART-EJY

grievances about card technology or "horrible customer service" become a breach of the implied covenant even though these matters are addressed nowhere in the contract. Opp. at 12.[6] That is not the law. *See* Mot at 12-13. Plaintiffs' theory would transform the implied covenant from a duty to carry out the *express* provisions of a contract in good faith, to a weapon for any party to a contract to impose—after the fact—terms that were never bargained for or contemplated, or even terms that were expressly rejected. There can be no implied covenant claim based on the purported failure to take additional actions that appear nowhere in the contract and far exceed its scope. Mot. at 12.[7]

        **C.**     **Plaintiffs' Implied Contract Claim (Count 7) Must Be Dismissed.**

Plaintiffs are wrong that an implied contract can exist on top of an express contract, and the out-of-district cases they cite do not support their argument.[8] This District is clear that "an action does not lie on an implied contract where there exists between the parties an express contract covering the same subject matter"—here, the Account Agreement. *Rockstar, Inc. v. Original Good Brand Corp.*, 2010 WL 3154120, at *6 (D. Nev. Aug. 9, 2010). Additionally, Plaintiffs do not even attempt to argue that any allegations in the FACC establish mutual assent to an implied contract. *See* Mot. at 13-14. Instead, as with their breach of implied contract claims, Plaintiffs appear to reference an attachment to their Opposition that describes the features of the

---

[6] To the extent Plaintiffs base these purported "promises" on Exhibit B to their Opposition, BANA objects and moves to strike the exhibit, which was not part of the FACC and for which Plaintiffs did not seek judicial notice. *Collins v. Barczewski*, 841 F. Supp. 333, 335 (D. Nev. 1993). Neither Exhibit B nor the Opposition explains what Exhibit B is, who drafted it, or when it was prepared. Moreover, the Account Agreement includes a merger clause that forecloses any effort to appeal to any alleged promises in other documents. Mot., Ex. 1 at 1 ("[Y]ou are not entitled to any rights or benefits given to deposit account customers or debit card holders at Bank of America, N.A. unless such rights or benefits are contained in this Agreement").

[7] Simply disagreeing with a bank's decision to freeze an account does not mean the bank acted in bad faith. *See Sahinov v. GEICO Advantage Ins. Co.*, 2021 WL 4964311, *3 (D. Nev. Oct. 25, 2021) ("disagreement is not grounds for a bad faith claim").

[8] *See Castillo v. Seagate Tech., LLC,* 2016 WL 9280242, *8-10 (N.D. Cal. Sept. 14, 2016) (parties did not have an express contract); *Rudolph v. Hudson's Bay Co.*, 2019 WL 2023713, *11 (S.D.N.Y. May 7, 2019) (discussing implied contract claim against retailer, not payment card provider); *In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, *11 (S.D.N.Y. Aug. 4, 2021) (allowing implied contract claim after finding no explicit contract existed).

REPLY ISO MOTION TO DISMISS        7        CASE NO. 2:21-CV-01254-ART-EJY

1  debit card and assert that BANA violated an unspecified implied contract by failing to provide
2  "the easiest and fastest way to receive [] unemployment insurance payments" as stated therein.[9]
3  Opp. at 13. Plaintiffs identify no allegations, however, to show that this document was an offer
4  that any Plaintiff saw, never mind accepted. *See Mizrahi v. Wells Fargo Home Mortg.*, 2010 WL
5  2521742, at *3 (D. Nev. June 16, 2010) (no implied contract claim where no "meeting of the
6  minds"). Further, the terms "easiest" and "fastest" are not sufficiently ascertainable to be treated
7  as an enforceable contractual term. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) (implied
8  contract terms must be "sufficiently certain and definite"). This claim must be dismissed.

### III. PLAINTIFFS FAIL TO STATE A CLAIM AS "THIRD-PARTY BENEFICIARIES" OF THE DETR AGREEMENT (COUNTS 10 AND 11).

Plaintiffs do not point to a single provision in the contract that would indicate an intent to confer third-party beneficiary status—a theory that would allow hundreds of thousands of unemployment benefits recipients to enforce a state contract. Instead, they assert that the question of third-party beneficiary status is a mixed question of fact and law such that it can never be decided on a motion to dismiss. Opp. at 15. That is wrong: Plaintiffs still have an obligation to assert sufficient factual allegations to provide plausible grounds for relief. *See, e.g., Balsam v. Tucows*, 627 F.3d 1158, 1163 (9th Cir. 2010) (affirming dismissal of third-party beneficiary claim). Plaintiffs have not offered any facts to rebut the presumption that third-party beneficiaries of a government contract are presumed to be incidental, not intended, beneficiaries. Mot. at 14.

### IV. PLAINTIFFS HAVE NOT STATED A CLAIM FOR NEGLIGENCE & NEGLIGENCE PER SE (COUNT 5).

Plaintiffs' Opposition fails to show that their negligence-based claims can survive in light of (1) the economic loss doctrine, (2) the absence of any legal basis for their asserted duties, and (3) the lack of any facts to show causation.

First, Plaintiffs cannot avoid the economic loss rule by poorly pleading a contract claim. Plaintiffs suggest that if they cannot bring a claim for breach of contract then they can

---

[9] As stated in footnote 6, *supra*, this document should not be considered regardless.

REPLY ISO MOTION TO DISMISS                    8                    CASE NO. 2:21-CV-01254-ART-EJY

1  alternatively recover under negligence. Opp. at 16. Plaintiffs misunderstand the caselaw on this
2  issue. As Plaintiffs' cited cases explain, when two parties have *no* contractual relationship, a
3  court might allow the plaintiff to recover in negligence. *See Lopez v. Javier Corral, D.C.*, 367
4  P.3d 745, 2010 WL 5541115, at *3-4 (Nev. Dec. 20, 2010). But where, as here, the parties *do*
5  have a contractual relationship, that is precisely when the economic loss rule applies. *See First*
6  *Magnus Fin. Corp. v. Rondeau*, 2012 WL 607563, at *2 (D. Nev. Feb. 24, 2012) ("The economic
7  loss doctrine bars a plaintiff from recovering 'purely economic losses' as a result of an
8  unintentional tort.") (internal quotation omitted). Plaintiffs also briefly point to vague non-
9  economic harms (Opp. at 16-17), but they fail to allege that they "suffered a physical impact or
10 serious emotional distress resulting in physical injury or illness." *Presidio Adventures*
11 *Development v. Countrywide Financial Corp.*, 2014 WL 1248293, *6-7 (D. Nev. March 26,
12 2014) (applying the economic loss rule notwithstanding plaintiffs' allegations that they
13 experienced "anxiety" and "loss of time"). Finally, Plaintiffs have not shown that they "stood in
14 a special relationship" with BANA because BANA was the only vendor working with DETR to
15 deliver benefits. Opp. at 17. To start, Plaintiffs never allege that they had a special relationship
16 with BANA. *See DiMartini v. Purcell Tire &* Rubber, 2009 WL 10697342, *6 (D. Nev. Dec. 14,
17 2009). Second, as they explicitly acknowledge, Plaintiffs could have chosen to receive their
18 benefits via check, FACC ¶ 320—meaning they *did* have a choice whether to work with BANA.
19 Regardless, Plaintiffs' reliance on BANA to process transactions made with their DETR account
20 is insufficient to establish a special relationship. *See Pereos v. Nationstar Mortg., LLC*, 2015 WL
21 685243, *4 n.5 (D. Nev. Feb. 18, 2015) (rejecting special relationship argument where parties had
22 "an arm's length transaction"). Plaintiffs cite a series of inapposite data-breach cases (Opp. at 17-
23 18), but they are not raising a claim based on harm suffered from the loss of their personal
24 information (nor, for that matter, has any individual Plaintiff alleged that they experienced or
25 were harmed by any alleged data breach).
26      Second, Plaintiffs' attempt to premise their negligence claims on an "ordinary duty of
27 care" fails, Opp. at 18, as they do not attempt to explain how that amorphous, undefined duty
28

REPLY ISO MOTION TO DISMISS          9          CASE NO. 2:21-CV-01254-ART-EJY

gives rise to any of the specific duties they allege, such as requiring banks to use certain card technology or provide a certain level of customer service. Mot. at 16-17. While Plaintiffs rely (at 18-19) on a series of out-of-district cases to suggest that BANA owed cardholders a duty of care, Nevada law is clear that there is no special relationship between a bank and its customers. *Cascade Investments, Inc. v. Bank of Am., N.A.*, 2000 WL 1842945, at *2 (D. Nev. Sept. 29, 2000); *see also Garner v. Bank of Am. Corp.*, 2014 WL 1945142, at *7, 8 (D. Nev. May 13, 2014) (dismissing negligence claim against bank because there is no special relationship).

Third, Plaintiffs have waived any argument that they alleged causation, and their claim fails on that basis alone. Plaintiffs assert that the FACC "details out how BOA's mishandling of Accounts directly caused Plaintiffs to not be able to access their funds." Opp. at 20. Not so: Nowhere in the FACC do Plaintiffs connect their individual experiences of loss of funds (which not all Plaintiffs even allege, *see supra*, n.2) to their sweeping statements about the card technology used by BANA or its customer service. Mot. at 17. Plaintiffs cannot avoid dismissal of the claims of 224 Plaintiffs with a "*See generally* Am. Compl." cite. Opp. at 20.[10]

## V. PLAINTIFFS HAVE NOT STATED A BREACH OF FIDUCIARY DUTY CLAIM (COUNT 9).

Plaintiffs consent to dismissal of their breach of fiduciary duty claim. Opp. at 21 n.4.

## VI. PLAINTIFFS HAVE NOT STATED A CLAIM FOR VIOLATION OF THE DTPA (COUNT 4).

The *Yip* Plaintiffs' sole response with respect to the DTPA is to join the *Hamilton* Plaintiffs' defense of the DTPA claim, (Opp. at 21), but BANA's arguments for dismissal are not the same in both cases, particularly because the two DTPA claims involve different sections of the statute (*compare* NRS 598.0915.9-12 (defining deceptive trade practice to include making false statements as alleged in *Yip*) *with* NRS 598.0923 (defining deceptive trade practice to include violations of federal law and regulations as alleged in *Hamilton*)). For example, the

---

[10] Plaintiffs also suggest that negligence in Nevada does not require causation, noting that *Lawrence v. Las Vegas Metro. Police Dep't*, 451 F. Supp. 3d 1154, 1172 (D. Nev. 2020), involved a wrongful death claim. Opp. at 20. But causation is a fundamental element of *all* negligence claims, as *Lawrence* itself makes clear. *Id.* ("[c]ausation" is "a necessary element to find negligence"); *see also Turner v. Mandalay Sports Entertainment, LLC*, 124 Nev. 213, 217 (2008) (outlining the elements of a general negligence claim).

REPLY ISO MOTION TO DISMISS         10         CASE NO. 2:21-CV-01254-ART-EJY

*Hamilton* Opposition asserts (at 22) that BANA's supposed use of a "faulty fraud filter" amounts to an "unconscionable practice" under the statute (although none of the *Hamilton* plaintiffs allege that their account was frozen based on the filter), but there is no mention of any fraud filter in the *Yip* FACC, *see supra*, pp. 5-6.  Further, BANA's Motion expressly highlighted the *Yip* Plaintiffs' failure to meet the heightened pleading standard for DTPA claims based on false representations. Mot. at 19-20.  The *Hamilton* Opposition does not discuss false representations at all.  Plaintiffs have therefore conceded this argument.  *Duensing*, 2013 WL 1316890, at *5 n.3.[11]

### VII. PLAINTIFFS HAVE NOT STATED A DUE PROCESS CLAIM (COUNTS 2 & 3).

#### A. Bank of America Is Not a State Actor.

Plaintiffs' Opposition fails to demonstrate that BANA—a private bank—was engaged in state action under any of the applicable tests.  First, BANA was not engaged in a "traditionally and exclusively governmental" function with respect to its "administering State public unemployment benefits."  Opp. at 21.  Nowhere do Plaintiffs allege that BANA played any role in determining or revoking eligibility for benefits, and they fail to identify any additional "administrative" activity that was traditionally conducted by the state.  *See* FACC ¶¶ 309-310; *see Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157 (1978) (explaining that "very few" functions have been "exclusively reserved to the states").[12]  Plaintiffs have likewise failed to show that BANA is a state actor under the "joint action" test.  Opp. at 22.  Plaintiffs assert that DETR "knowingly accept[ed] the benefits derived from [BANA's] unconstitutional behavior," *Parks School of Business v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995), but make no attempt to show that DETR benefitted financially from BANA's alleged conduct—let alone that any alleged benefits

---

[11] Plaintiffs' negligence per se argument largely repeats their conclusory allegations.  With respect to the GLBA, Plaintiffs now assert that BANA violated 15 U.S.C. § 6801(a), but this provision is a general statement of Congressional policy with no private right of action.  *See Wells Fargo Bank, N.A. v. Jenkins*, 744 F.E.2d 686, 687-88 (Ga. 2013) (explaining that this provision "does not provide" any "ascertainable standard of conduct" for purposes of stating a negligence claim).  And Plaintiffs have failed to allege a DTPA violation for the reasons discussed above.  *See supra*, pp. 11-12.

[12] Plaintiffs' Opposition fails to address BANA's argument that the DETR Agreement did not amount to a join undertaking between Nevada and BANA and so that argument is waived.  *Duensing*, 2013 WL 1316890 at *5 n. 3.

REPLY ISO MOTION TO DISMISS       11       CASE NO. 2:21-CV-01254-ART-EJY

were "an indispensable element in [the state's] financial success." *Vincent v. Trend W. Tech. Corp.*, 828 F.2d 563, 569 (9th Cir. 1987).  Finally, Plaintiffs have failed to show that the "nexus" test applies.  Under Plaintiffs' approach, any private actor that follows directions from the State would be converted into a state actor—an unprecedent expansion of constitutional liability.

      **B.**    **Plaintiffs Have Not Alleged Any Due Process Violation.**

Plaintiffs' argument that BANA had a constitutional obligation to provide advance notice of account freezes initiated to thwart fraud is both illogical and untethered from the law.  The Supreme Court has recognized that the notice requirement is not absolute, and the Ninth Circuit has specifically held that an unannounced freeze is consistent with due process where, as here, it was initiated to avoid fraud.  Mot. at 23 (citing *Fed. Deposit Ins. Co. v. Mallen*, 486 U.S. 230, 240 (1988) and *Spiegel v. Ryan*, 946 F.2d 1435, 1440 (9th Cir. 1991)).  Plaintiffs attempt to cabin *Spiegel* to the particular factual circumstances of that case, but the court adopted a broader rule for cases involving "special need for very prompt action" (*e.g.*, to avoid imminent fraud). *Spiegel*, 946 F.2d at 1440.

**VIII.**    **PLAINTIFFS HAVE NOT STATED A CLAIM FOR UNJUST ENRICHMENT AND MONEY HAD AND RECEIVED (COUNT 12).**

As explained in BANA's Reply to the *Hamilton* Opposition (p. 5), *Mielke v. Standard Metals Processing, Inc.*, 2015 WL 1886709 (D. Nev. Apr. 24, 2015), is inapposite because there the parties disputed whether a valid contract existed, and an unjust enrichment claim could be made if there were no valid contract.  Here, no one disputes the existence of a contract (*i.e.*, the Account Agreement).  As such, the unjust enrichment claim must be dismissed.

**IX.**    **PLAINTIFFS SHOULD NOT BE GRANTED ANOTHER OPPORTUNITY TO AMEND.**

BANA raised these same pleading deficiencies in its Motion to Dismiss Plaintiffs' original complaint.  Plaintiffs' failure to correct them in the FACC demonstrates that any further amendment would be futile. *Douglas Coder & Linda Coder Family LLLP v. RNO Exhibitions, LLC*, 2020 WL 5995495, at *8 (D. Nev. Oct. 9, 2020).

Dated: February 23, 2023

Respectfully submitted,

By: s/ *Kelly H. Dove*
Kelly H. Dove
Nevada Bar No. 10569
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169

James W. McGarry (*pro hac vice*)
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617.570.1000
Email: jmcgarry@goodwinlaw.com

Yvonne Chan
Jones Day (*pro hac vice*)
100 High Street
Boston, MA 02210
Tel.: 617.449.6914
Email: ychan@jonesday.com

*Attorneys for Defendant Bank of America, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the clerk of the court for the United States District Court for the District of Nevada by using the CM/ECF system on February 23, 2023. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. I certify under penalty of perjury that the foregoing is true and correct.

Executed:   February 23, 2023                    s/ *Kelly H. Dove*